Filed 6/30/14  In re G.G. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re G.G., a Person Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>N.G.,<br><br>　　　Defendant and Appellant. | A139125<br><br>(Mendocino County<br>Super. Ct. No. SCUK-JVSQ-13-16744) |

Appellant N.G. (Mother), mother of two-year-old G.G., appeals from the juvenile court's jurisdictional and dispositional orders removing G.G. from her care and placing him in foster care.[1]  She contends the orders must be reversed because:  (1) the petition

---

[1]Mother has two other children, six-year-old K.G. and four-year-old J.G., who are not parties to this appeal.  To obtain context, maintain consistency and economize judicial resources, we hereby grant the Mendocino County Health and Human Services Agency's (the Department) request for judicial notice of the record and our prior unpublished opinion in case A139037, in which Mother challenged the juvenile court's order removing K.G. and J.G. from her custody, bypassing reunification services as to those children, and setting a permanency hearing under Welfare and Institutions Code section 366.26.  (*N.G. v. Superior Court of Mendocino County* (Sept. 30, 2013, A139037) [nonpub. opn.].)  (See Evid. Code, § 451, subd. (a); see *In re Luke L.* (1996) 44 Cal.App.4th 670, 674, fn. 3.)

failed to state a cause of action; and (2) there was insufficient evidence to support the jurisdictional findings. We reject the contention and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 2013, the Department filed a dependency petition under Welfare and Institutions Code section 300[2] alleging that then-one-year-old G.G. was at risk of suffering serious physical harm "by the inability of [Mother and the father, J.S. (Father)[3]] . . . to provide regular care for the child" due to their substance abuse. The petition further alleged that G.G.'s siblings, K.G. and J.G., had been abused or neglected by the parents and that there was a substantial risk G.G. would also be abused or neglected.

The detention report described a March 29, 2013 incident in which Mother was arrested following a domestic altercation with Father. Mother resisted arrest, kicked a police officer, and refused to get back into the patrol car. Although G.G. and his siblings were not there when the domestic altercation between their parents took place, they were present or nearby for Mother's subsequent arrest, and K.G. witnessed Mother fight with police. Mother, who had a blood alcohol content of 0.127 percent at the time of the arrest, was charged with domestic battery and resisting arrest. K.G. and J.G., who were already dependents of the juvenile court at the time, as well as G.G., were taken into protective custody.

At the detention hearing on April 4, 2013, Mother's counsel objected to detention on the ground that there were "protect[ive] measures put in place when she was drinking" i.e., there were appropriate people present to care for her children when she drank. The Department requested detention, and minor's counsel agreed, citing Mother's long history of substance abuse. The juvenile court ordered G.G. and his siblings detained.

In the jurisdiction report filed April 10, 2013, the social worker described the March 29, 2013 incident as delineated in the detention report and supporting documents, including the police report. The report noted that Mother had tested positive for

---

[2]All further statutory references are to the Welfare and Institutions Code.

[3]Because Father has not challenged the orders, the Department focuses on the facts relating to Mother.

2

marijuana on December 18, 2012. The report described the parents' history with the juvenile court, which included the dependency history of K.G. and J.G. According to the report, the Department had filed a petition in August 2010, alleging K.G. and J.G. came within the jurisdiction of the juvenile court pursuant to section 300, subdivision (b). The sustained petition stated the children were left with an inappropriate caretaker and that Father, who abused alcohol, had called police for help to take care of the children. Father was given family reunification services and the children were returned to Mother under a family maintenance plan.

In March 2011, the Department filed a section 387 supplemental petition seeking a more restrictive placement for the children. The juvenile court sustained the petition, delineating Mother's substance abuse, including her marijuana and methamphetamine use, and stating she had failed to participate in court ordered services. At a May 4, 2011 dispositional hearing, the court ordered reunification services for both parents. A few months later, on August 11, 2011, Mother was ordered to attend Family Dependency Drug Court (FDDC). At an October 19, 2011 six-month review, the court ordered additional family reunification services for Mother. On March 13, 2012, the court returned J.G. and K.G. to their parents under a family maintenance plan.

A hearing was held on July 17, 2012 to inform the court of a relapse by Mother. K.G. and J.G. continued to live with the parents under a family maintenance plan until March 28, 2013, when the court detained them from Father's care, and shortly thereafter, removed them from Mother's care due to Mother's alcohol use, the domestic violence incident with Father, and altercation with police.

Mother's counsel filed a "Trial Brief in Support of Dismissal of Allegations" arguing that although she was under the influence of alcohol and not compliant with police officers, there was no nexus between her use and ability to care for G.G. Mother's counsel also asserted that G.G. was with appropriate caregivers at all times and that Mother took actions to keep her children safe and well cared for during her relapse. The Department opposed the motion to dismiss.

3

The Department filed an addendum report stating that K.G. had witnessed her Mother being arrested while under the influence of alcohol. K.G. told the social worker that she saw Mother screaming after being handcuffed. She also stated that three policemen pushed Mother into a car and "socked her in the neck."

At a combined jurisdictional hearing as to G.G.'s petition and a section 387 supplemental petition as to K.G. and J.G., Mother testified that she was feeling overwhelmed on March 29, 2013, and purchased alcohol to drink. She admitted arguing with Father but denied striking him. She bought and consumed more alcohol after the confrontation. She testified that she "did kind of kick and scream" because she was upset that she was being charged for something she did not do. Mother claimed she was not alone with the children at any point when she was intoxicated and that there were sober people present. She admitted she was supposed to refrain from using alcohol and had relapsed. She also admitted that alcohol was a problem for her and that she was an addict.

Mother's boyfriend, J.L., testified that he was present on the evening of March 29, 2013, and had not been drinking. He noted Mother was "a little drunk." He acknowledged he was supposed to submit to a background check with the Department on K.G. and J.G.'s case but had not done so. Mother's cousin, A.R., testified that he was present with the children on the evening of March 29, 2013. He testified he was sober that evening and had been asked by Mother to watch the children because she had been drinking. A.R. testified that he had been asked to provide his fingerprints to the Department for a background check but had failed to do so.

Department social worker Laura Sullivan testified that she had attempted to do a background check on Mother's cousin, A.R., but that she was unable to do so without a social security number or a fingerprint. Her attempt to do a background check based solely on his name and birthdate turned up a lengthy criminal history. She testified to the impact of violence on children, stating it is "scary" for them and that they have "fear responses, trauma responses when they witness violence." She noted the parents had a tumultuous relationship and it was the second time someone was arrested for domestic

4

violence, observing, "[i]t's a cycle of violence." The social worker stated that the risk to G.G. and his siblings was the same as it had been two-and-a-half years before "as far as the mother's substance use and with the domestic violence being a continual concern between the parties."

The juvenile court found the allegations of the petition pursuant to section 300, subdivisions (b) and (j) to be true as to both parents. Referring all three children, the court stated, "It's like these parents haven't figured out, despite all the services and help they have been offered, how to keep their kids safe from the very issues that brought them to the attention of the Court in August 2010, [i.e.,] substance use and getting violent with each other and people around them with their using. And their kids are too young to protect themselves from this kind of conduct." The court stated that while the incident involving police "may not have resulted in any actual physical harm to the children," the children were at risk due to Mother's conduct because she was "out of control," "kicking" and "fighting" and "yelling," and was "upsetting everyone around her and the kids could have been caught in the crossfire" or could have run out of the house. The court stated that "given the totality of the picture presented in this case, the number of relapses and difficulties that these parents have experienced, the total picture does provide a factual basis to sustain the allegations." The court set a disposition hearing for June 13, 2013.

In the disposition report, the social worker noted that the Department could recommend bypassing services for Mother as to G.G. pursuant to section 361.5, subdivision (b)(13), because she had a history of extensive, abusive, and chronic use of drugs or alcohol and had failed or refused to comply with a program of drug or alcohol treatment in the preceding three-year period. Instead, the Department recommended offering Mother services as to G.G., since she was progressing in her FDDC program and had not yet received services in relation to him. On June 6, 2013, Mother signed an FDDC agreement promising "to follow all rules and guidelines in the handbook."

At the disposition hearing in June 2013, Mother's counsel submitted on the reports, noting that Mother was "very appreciative of being offered services" as to G.G.

5

The juvenile court found clear and convincing evidence that there was a substantial risk of harm to G.G. if he was returned to Mother's care. The court expressed concern not only about Mother's use of alcohol and the "minimal" progress she had made, but also the "serious incident of acting out while drinking . . . with the children around." The court adopted the Department's proposed findings and orders and ordered a plan of family reunification for Mother. The court bypassed services to Father. Mother timely filed a notice of appeal.

## DISCUSSION

### 1. Legal Sufficiency of the Dependency Petition

Mother contends the jurisdictional and dispositional orders must be reversed because the petition failed to state a cause of action. The Department asserts Mother forfeited this claim by failing to raise it below.[4] The Department notes there is a split of authority regarding whether the legal sufficiency of a dependency petition can be challenged for the first time on appeal, and urges this court to follow what it refers to as the majority view that forfeiture applies. (Citing *In re John M.* (2012) 212 Cal.App.4th 1117, 1123 [Second District, Division 8, holding forfeiture applies]; *In re N.M.* (2011) 197 Cal.App.4th 159, 166 [Fourth District, Division 1, holding forfeiture applies]; *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82–83 [Second District, Division 4, holding forfeiture applies]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1640 [First District, Division 5, holding forfeiture applies]; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 328 [Sixth District holding forfeiture applies]; but see *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399–400 [Third District holding forfeiture does not apply].)

We need not—and therefore will not—address whether Mother forfeited the claim because a reviewing court is not required to consider a challenge to the sufficiency of the petition if substantial evidence supports the juvenile court's assertion of jurisdiction.

---

[4]At the end of the jurisdictional hearing, Mother's counsel asked the court to dismiss the petition, arguing that, although Mother drank alcohol, there was "no nexus that her actions put [G.G.] at risk of harm" and that she "took protective steps." Counsel did not argue the petition was insufficient on its face.

(*In re John M.*, *supra*, 212 Cal.App.4th at p. 1123, citing *In re N.M.*, *supra*, 197 Cal.App.4th at p. 166.)  This is because, " ' "[i]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant." ' " (*Ibid.*)  " 'The only exception occurs when a parent claims a petition fails to provide actual notice of the factual allegations.  Unless the alleged factual deficiencies result in a miscarriage of justice, the reversal of a jurisdictional order supported by substantial evidence is unwarranted.' " (*In re John M.*, *supra*, 212 Cal.App.4th at p. 1123, citing *In re Javier G.* (2006) 137 Cal.App.4th 453, 458–459.)  Here, Mother does not claim the petition failed to provide actual notice of the factual allegations, and the record shows she fully addressed them as it related to jurisdiction, proffering sufficiency of the evidence arguments.  "Under these circumstances, mother cannot argue she had prejudicially inadequate notice of the allegations against her." (*In re John M.*, *supra*, 212 Cal.App.4th at pp. 1123–1124, citing *In re Athena P.* (2002) 103 Cal.App.4th 617, 627–628 [because the mother did not claim prejudicially inadequate notice, the only issue was whether there was sufficient evidence to support the jurisdictional findings].)  Moreover, as we conclude below, there was sufficient evidence to support the jurisdictional findings.

### 2. Sufficiency of the Evidence

Mother contends the evidence was insufficient to show that G.G. was exposed to substantial risk of serious physical harm, or that he was at substantial risk due to the abuse or neglect of his siblings.[5]  We disagree.

In considering a claim of insufficient evidence to support a jurisdictional finding, the appellate court reviews the evidence in the light most favorable to the juvenile court's order, deciding only whether the findings are supported by substantial evidence.  (*In re*

---

[5]Here, the juvenile court found jurisdiction under section 300, subdivision (b), which provides that jurisdiction may be assumed if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the failure or inability of his parent to provide regular care due to the parent's substance abuse.  Section 300, subdivision (j), under which the court also found jurisdiction, provides for jurisdiction when "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

*Shelley J.*, *supra*, 68 Cal.App.4th at p. 329.) If it is, the appellate court affirms the order even if other evidence supports a contrary conclusion. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610–611.) In dependency proceedings, the Department must prove by a preponderance of the evidence that the child who is the subject of the petition comes under the juvenile court's jurisdiction. (§ 355; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248; *In re Amy M.* (1991) 232 Cal.App.3d 849, 859–860.) On appeal, the parent has the burden of showing there is insufficient evidence to support the order. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Mother had a long history with the Department on her older two children's cases, and her substance abuse problems were unresolved despite having been offered numerous services over the course of almost three years, including participation in the FDDC program, therapy, and anger management classes. She had a poor track record of remaining sober and had multiple relapses involving methamphetamine, marijuana and alcohol. The March 2013 incident involved yet another relapse with alcohol and resulted in an altercation with Father and a violent episode with police while K.G. watched and G.G. was nearby. She asserts G.G. was not at risk because she left her children "surrounded by sober and responsible adults" while she drank, but the record showed these caregivers were unknown to the Department and/or had failed to submit to background checks.

Mother cites *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 for the proposition that a risk of harm to a child must exist at the time of the jurisdiction hearing to support a jurisdictional finding. To support her argument, Mother notes that G.G. was not at risk of being harmed because he was too young to run out of the house on his own, and because she had not used alcohol or drugs and had been participating in treatment since the incident. The court in *In re Rocco M.*, however, noted that past conduct may be probative of current conditions if there is reason to believe the problematic acts will continue in the future. (*Id.* at p. 824.) Here, given Mother's past history of drug and alcohol relapses, there was reason to believe the March 2013 incident was not an isolated occurrence.

Mother also asserts "the evidence failed to establish sibling abuse."  There was sufficient evidence in the record, however, to support a finding that K.G. and J.G. were abused or neglected, or at substantial risk of abuse or neglect, due to their parents' substance abuse issues and their failure to provide proper care.  K.G. and J.G. were dependents of the court for more than two-and-a-half years by the time the juvenile court considered G.G.'s petition.  The juvenile court had sustained a petition as to K.G. and J.G. in October 2010 after the parents left them with an inappropriate caretaker and Father, who abused alcohol, called the police for help in caring for the children.  K.G. and J.G. were declared dependents and remained with Mother under a family maintenance plan.  In March 2011, the court sustained a section 387 supplemental petition, holding that family maintenance with Mother had been ineffective in protecting the siblings because she abused marijuana and methamphetamine and failed to participate in court-ordered services.  Mother was offered reunification services and required to participate in treatment and to refrain from using alcohol or drugs.  In March 2012, the siblings were returned to their parents under another family maintenance plan, and just three months later, Mother tested positive for methamphetamine.  At that time, Mother received a stern warning regarding the risk of harm to the siblings and G.G., who was then four-months-old.  Despite these admonishments and the help and guidance she received from the Department, Mother relapsed again with marijuana in December 2012, and with alcohol in March 2013.  Substantial evidence supports the juvenile court's jurisdictional findings.

**DISPOSITION**

The orders are affirmed.

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Jenkins, J.