[No. B241501. Second Dist., Div. Eight. Dec. 17, 2012.]

In re JOHN M., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
L.C., Defendant and Appellant.

Counsel

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Opinion

**BIGELOW, P. J.**—L.C. (mother) appeals from juvenile court orders asserting jurisdiction over her son, John M., and removing him from her custody. Mother contends the dependency petition was facially insufficient, and substantial evidence did not support the jurisdictional or dispositional orders. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

John M. came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in December 2011, when mother was arrested for violating a restraining order.[1] Mother and John were at the maternal grandmother's home, but the grandmother had a restraining order against mother. The maternal grandmother called the police because mother would not leave her house. When police officers arrived they found John alone and asleep in the back of mother's SUV. Then-11-year-old John was naked or wearing only his underclothes. He was visibly dirty and disheveled. John is blind and has autism. His speech is limited. Police found mother hiding behind furniture elsewhere on the maternal grandmother's property. After she was apprehended, mother told police there were no relatives who could take John. She refused to provide father's contact information, claiming he was not involved in John's life.

The maternal grandmother declined to take John, explaining that he was sometimes violent and she feared him. Mother and John were homeless and had been living in mother's car. Mother told DCFS she had not gone to a shelter because she was waiting for John's Social Security insurance check to arrive so that they could rent a motel room. John was unable to provide a statement. John's father (father) told DCFS he had been providing financial support to mother and did not know she and John were living in a car. Father indicated he had several times paid for motels for mother and John to use, but on several occasions they never arrived to use the room. Father had recently been concerned about mother's mental health. He wanted John to be enrolled in a residential program at the school John attended for blind children.

DCFS filed a petition with two allegations under Welfare and Institutions Code section 300, subdivision (b):[2] (1) "On 12/31/2011, [mother] placed the child in a detrimental and endangering situation, in that the mother left the blind and Autistic child in the trunk of a car without adult supervision. Such a detrimental and endangering situation established for the child by the mother

---

[1] Prior to this time there were four referrals to DCFS that were determined to be inconclusive or unfounded. In September 2010, DCFS received a referral after mother went to Children's Hospital, asked for psychiatric referrals, and "caused a scene." In January 2011, DCFS received a referral alleging mother did not take John to school on a regular basis and, as a result, John could not read Braille and had no language ability. The reporter also claimed to have seen John hit mother and take his clothes off in public. In August 2011, DCFS received a referral alleging mother's home was filthy, and John was not receiving speech or behavioral therapy or regularly attending school. The referral indicated mother was believed to be schizophrenic. In September 2011, a referral indicated mother refused to apply for housing assistance and was living with John in a vehicle parked in front of the maternal grandmother's house. The referral noted John appeared skinny and had been observed wearing dirty clothing.

[2] All further statutory references are to the Welfare and Institutions Code.

and the mother's failure to provide adult supervision for the child endangers the child's physical health and safety, placing the child at risk of physical harm, damage and danger" and (2) "[John M.] has been diagnosed with blindness and Autism, and [mother] has medically neglected the child by failing and refusing to obtain necessary medical care for the child. The mother failed to schedule the child's Regional Center appointments. Such medical neglect of the child on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger and medical neglect." The juvenile court initially detained John in foster care, but in January 2012 he was released to father.

In February 2012, DCFS filed a jurisdiction and disposition report. An administrator at John's school reported mother did not consistently ensure John attended school. The administrator believed mother needed parent education related to John's special needs. She told DCFS that when school personnel asked mother about Regional Center services for John, mother declined to discuss the matter. John's individualized education program (IEP) was attached to the report. The IEP described John's strengths and needs in areas such as communication, as well as movement. According to the IEP, John was able to say words such as "cracker" and "more," and could follow class routines with encouragement and cues from staff. However, the IEP noted John needed to build his vocabulary to include words such as "toilet," and he needed partial physical assistance to make some signs or express choices. The IEP indicated John used curse words "up to 25 times a day," only ceasing momentarily when told to stop. Although John had shown progress in walking with a cane, he needed additional improvement to hold the cane so as to detect obstacles.

The IEP summarized John's needs as follows: "[John] continues to demonstrate decreased ability to use gestures, vocalizations and simple phrases and sentences spontaneously (without support) to express basic communicative functions. Currently, he exhibits difficulty verbalizing the following communicative functions: commenting, giving information, asking/responding to questions and elaborating. [John's] limited language usage often makes it difficult to understand [his] wishes and may lead to him becoming frustrated. [John] participates in a modified curriculum (specific to his special needs) however; he continues to experience difficulty with communication in the classroom setting."

The maternal grandmother told DCFS that when mother and John lived with her, they were violent with each other. The grandmother reported that John had scratches on his body, John hit mother, and mother swore and yelled at John. A family friend told DCFS that John bit and scratched mother, and mother did not bathe John regularly. The report noted that mother also did not

bathe regularly. Mother told the social worker "that she was wearing a coat saturated with John's urine and that she was not going to wash the coat until John returned home."

Father told DCFS he had talked with mother about refusing needed services for John. Father said he set up appointments for mother and she "blew them off" and made excuses for not pursuing services. Mother said she had tried to get in touch with the Regional Center but her calls were never returned. She also told DCFS she did not follow up with the Regional Center because her residence was unstable. Mother said John received medical care, but she had not taken him to a dentist for fear he would "tear up" the office. Mother denied she left John unsupervised in the back of her car, and said that when he was tired he would remove his clothes and lie in the back, with his undergarments on.

Before the jurisdiction and disposition hearing, DCFS discovered that father had allowed mother to move into his apartment to take care of John while he was working, despite the juvenile court order allowing mother only monitored visits. When DCFS reminded mother about the court's order, mother said "she was no longer homeless and would like for the Department to invest its time and resources in other families that truly are in need of the assistance. Additionally, mother added she believes the Department had done more harm than good for her family and as a result, her son's academic progress has declined." John was placed in foster care.

At the beginning of the April 2012 jurisdiction and disposition hearing, the court dismissed the dependency petition's first count, and amended the second count. The amended count read: "[John] has been diagnosed with blindness and Autism, and [mother] has a limited ability to deal with the child's above conditions. Such limited ability on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger and medical neglect." Mother asked the court to dismiss the petition. Mother's counsel argued mother was no longer homeless, and there was "no showing" that mother's alleged failure to secure all necessary services for John would cause him to suffer serious physical harm or illness. Mother's counsel further asserted: "I don't believe that the allegation that it's been proposed [*sic*] is jurisdictional. There has been no showing that this child has ever suffered or was at risk of suffering any type of serious physical harm or illness, and we will ask for the petition to be dismissed at this time." Counsel for DCFS expressed surprise at mother's argument, stating: "It is not my custom and practice to dilute my petition. I thought we had a settlement when I agreed to language which dilutes the allegation."

The trial court sustained the amended petition, and, over mother's objection, concluded removing John from his parents' custody was necessary. Mother's appeal followed.

## DISCUSSION

### I.  *Mother's Challenge to the Sufficiency of the Amended Petition*

Mother contends the amended petition was facially insufficient. Mother argues the allegation that she had a "limited ability" to deal with John's disabilities, even if true, would not form a proper basis for the assertion of dependency jurisdiction. DCFS contends mother forfeited this argument by failing to raise it below, and that the petition was sufficient.

Mother did not challenge the original petition. Instead, when the petition was amended at the beginning of the jurisdiction and disposition hearing, mother asked the court to dismiss the petition. Mother's counsel argued in part based on the allegations contained in the agency reports, but also asserted the petition allegation was "not jurisdictional" and should be dismissed.

█   In general, a parent may not challenge the sufficiency of allegations in a dependency petition on appeal if he or she did not raise the issue in the dependency court. (*In re N.M.* (2011) 197 Cal.App.4th 159, 166 [127 Cal.Rptr.3d 424] (*N.M.*); *In re David H.* (2008) 165 Cal.App.4th 1626, 1640 [82 Cal.Rptr.3d 81].) DCFS argues mother should have challenged the petition's sufficiency in writing, and immediately after the court amended the petition's language.   █   But assuming mother's argument at the jurisdiction hearing adequately preserved a challenge to the sufficiency of the petition, we still reject mother's argument because it is moot. " '[I]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant.' [Citation.]" (*N.M., supra,* at p. 166, fn. omitted.) "The only exception occurs when a parent claims a petition fails to provide actual notice of the factual allegations. Unless the alleged factual deficiencies result in a miscarriage of justice, the reversal of a jurisdictional order supported by substantial evidence is unwarranted." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 458–459 [40 Cal.Rptr.3d 383].)

Here, the court amended the petition at a fairly late stage in the proceedings. Although the language became less specific, by the time of the hearing the petition was accompanied by several DCFS reports. Under these circumstances, mother cannot argue she had prejudicially inadequate notice of the allegations against her. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 627–628 [127 Cal.Rptr.2d 46] [mother did not claim prejudicially inadequate notice;

the only issue was sufficiency of the evidence at the jurisdictional hearing].) We conclude below that substantial evidence supported the juvenile court's assertion of jurisdiction. Thus, we need not consider mother's argument that the petition was facially insufficient.

## II. *Substantial Evidence Supported the Court's Jurisdictional Finding*

Mother argues there was no substantial evidence to support the assertion of jurisdiction over John. We disagree. " 'We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.]' [Citation.] ' " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" [Citation.]' [Citation.]" (*In re V.M.* (2010) 191 Cal.App.4th 245, 252 [119 Cal.Rptr.3d 589].)

■ Under section 300, subdivision (b), the juvenile court may assert jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." Thus, "[t]he three elements for jurisdiction under section 300, subdivision (b) are: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the [child], or a 'substantial risk' of such harm or illness." ' [Citation.]" (*In re B.T.* (2011) 193 Cal.App.4th 685, 692 [122 Cal.Rptr.3d 651].)

There was substantial evidence that mother's conduct placed John at substantial risk of serious physical harm or illness. John was first detained because mother left him alone in a car, dirty, disheveled, and in a state of undress, while she hid to avoid the police after violating a restraining order. Although 11 years old, John is blind and has only limited ability to communicate. Leaving John alone, asleep, and undressed in a car while violating a restraining order and attempting to evade the police, placed him at risk of serious harm. Mother's subsequent comments and conduct offered no indication that this was a unique situation or that mother was unlikely to

engage in similar behavior in the future. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025–1026 [104 Cal.Rptr.3d 478] [in evaluating current risk, court should consider evidence of parent's current understanding of and attitude toward the past conduct that endangered a child].) When interviewed about the allegation that she left John unattended in the back of her car, mother did not acknowledge that her conduct was problematic; instead she insisted she was not far away from the car, and that John was not in a "trunk," because she drives a sport-utility vehicle.

Mother later violated a juvenile court order by moving into father's apartment to take care of John, in the face of the order that she was to only have monitored visits. When told about the violation, mother's response was to assert that since she was no longer homeless, DCFS should invest its resources elsewhere, and to claim DCFS involvement had caused John's academic progress to suffer. There was no indication mother understood or accepted the seriousness of violating a court order.

Other evidence also demonstrated mother's conduct placed John at risk of serious physical harm or illness. Witnesses reported that John was sometimes violent, including with mother. Some witnesses also reported that mother failed to bathe John regularly, so that he was at times extremely dirty. There was evidence that although father provided financial support and temporary housing to mother and John, mother failed to use these resources, instead resorting to living in a car. When mother was arrested she refused to provide father's contact information and asserted, apparently falsely, that he was not involved in John's life.

Personnel at John's school indicated mother did not ensure that John attended school regularly, she "was not cooperative with supportive services," and that she declined to discuss additional resources available to John through the Regional Center. Father also reported that mother had thwarted his efforts to get John additional services. As respondent points out on appeal, school for John involved far more than academics. Instead, it included a plan to assist John in learning basic communication skills and to navigate safely with a cane. Indeed, John's individualized education program identified communication and "self help" as key goals to be addressed at his school. This case is unlike *In re Janet T.* (2001) 93 Cal.App.4th 377, 388–389 [113 Cal.Rptr.2d 163], in which the court concluded the failure to attend school did not create a substantial risk of serious physical harm or illness. *Janet T.* concerned healthy teenagers who did not have John's severe disabilities. It is reasonable to infer that given John's cognitive delays, his significant inability to communicate, and the special nature of his school, that failure to attend regularly would place him at risk of serious physical harm.

We also note that although mother minimized the potential assistance available from the Regional Center, she told DCFS it could provide speech therapy and referrals. Eleven-year-old John had very limited speech. Yet, mother had not been cooperative with father or John's school in getting him additional services. In John's case, the juvenile court could conclude that mother's failure to ensure that he attended his specialized school, and her failure, and even resistance, to procuring appropriate services for John, placed him at substantial risk of serious harm.

This was not a case in which jurisdiction was based on mother's homelessness, poverty, or mother's simple failure to send John to school regularly. Substantial evidence supported the juvenile court's jurisdictional finding.

III. *Substantial Evidence Supported the Juvenile Court's Dispositional Order*

Mother contends there was insufficient evidence to support the juvenile court's order removing John from her custody. We find no error.

■ Under section 361, subdivision (c)(1), a dependent child may not be taken from the physical custody of the parents with whom the child resides at the time the petition was initiated unless the juvenile court finds by clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) "The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. (§ 361, subd. (c)(1).)" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917 [95 Cal.Rptr.3d 62].) " 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*N.M., supra,* 197 Cal.App.4th at pp. 169–170.) We review a dispositional order removing a child from parental custody for substantial evidence. (*In re D.G.* (2012) 208 Cal.App.4th 1562, 1574 [146 Cal.Rptr.3d 576].)

■ There was substantial evidence that John could not safely remain in mother's custody. Mother had for some time neglected to follow through on securing necessary services for John, failed to ensure that he attended school regularly, rejected father's attempts to help get additional services for John, had John live in her car with her instead of staying in motels father paid for, and failed to bathe John regularly. The juvenile court could infer these were

recurring problems, and nothing in mother's situation had changed to suggest that they would not continue in the future. Similarly, there was no indication mother ever acknowledged any problem with her leaving John in her car while she hid from law enforcement.

Mother contends John could have been placed with mother with "strict supervision." However, mother had twice violated court orders in the recent past: the restraining order against her, and the dependency court's order that she have only monitored visits. In addition, less than one month before the jurisdiction and disposition hearing, when DCFS discovered mother was living with John in father's apartment, mother's response was to suggest that it was time for DCFS involvement to end. Thus, the juvenile court could reasonably determine John could not be safely placed in mother's custody in the hope that she would comply with court orders or DCFS supervision. (*In re Maria R.* (2010) 185 Cal.App.4th 48, 71 [109 Cal.Rptr.3d 882] [mother's refusal to cooperate with agency was evidence that removal was necessary].)

## DISPOSITION

The juvenile court orders are affirmed.

Flier, J., and Grimes, J., concurred.