Filed 9/18/14  In re H.Q. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re H.Q. et al., Persons Coming Under the Juvenile Court Law. | B252497 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK41441) |
| Plaintiff and Respondent, | |
| v. | |
| E.Q., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Amy M. Pellman, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Mother E.Q.'s youngest two children, H.Q. (born in 2001) and Bianca (born in 2003), were already dependents of the juvenile court when the court sustained a subsequent petition (Welf. & Inst. Code, § 342)[1] and removed them from mother's custody (§ 361). Mother appeals challenging the sufficiency of the evidence to support the jurisdiction and disposition orders. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Viewing the evidence according to the usual rules (*In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1649), it shows that mother has had difficulty supervising, controlling, and protecting her many children. In 2010, mother hurt her back at work and is seeking workers' compensation. After that, she claims, her children ceased listening to her. With prodding from the social worker, mother listed her medications, which included two opiates, one anti-inflammatory drug, one antibiotic, one anti-nausea drug, and a muscle relaxant.

This family has been the subject of at least 11 referrals between January 2000 and February 2013 for a wide variety of issues, including general neglect and physical abuse in that, among other things, mother's companion left firearms and ammunition in the children's reach; mother and her companion were trafficking in drugs in the children's presence; cocaine and methamphetamines were left within the children's reach; and mother's older children abused drugs. Mother's children have been declared dependents of the court on at least three earlier occasions.

In May 2012, the juvenile court sustained a petition pursuant to section 300, subdivisions (b) and (j) and took jurisdiction over four of mother's minor children, including H.Q. and Bianca.[2] The court removed a sibling from mother's care but allowed

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Neither mother's older children, nor any of the fathers, is a party to this appeal.

H.Q. and Bianca to remain with her under the supervision of the Department of Children and Family Services (the Department). The girls received Wraparound services.

The girls apparently complied and made some progress with the wraparound services. However, toward the end of 2012, they reverted to their old ways, were not following household rules. They were disrespectful to, and bullied mother. The social worker reported that the girls were "often" disheveled and left the house without mother's permission or knowledge. At the social worker's next unannounced visit, the house was filthy and had a foul odor. Eleven-year-old H.Q. was not home and neither mother nor Bianca knew where she was. The social worker discovered foot-high marijuana plants belonging to mother's adult son E. growing in the backyard. Mother reported being " 'so overwhelmed [she did not] know what to do.' "

On February 27, 2013, the Department received a referral alleging H.Q. and Bianca had been exposed to emotional abuse. An investigation indicated that the children were exposed to E.'s drug use and to domestic violence. Mother was aware that drugs and drug paraphernalia were within the children's reach. The social worker concluded that the children "are very protective of their brother and . . . they may have minimized the domestic violence incident because they did not want him to leave the home." Mother appeared afraid of E.. Despite mother's promises, the social worker doubted mother would be able to keep E. out of her home. Mother's failure to control and supervise her children endangered their emotional and physical well-being, the Department reported.

In March 2013, a drug test revealed that mother had high levels of amphetamines and methamphetamines, which are *not* associated with any of her prescription medications, but are associated with crystal methamphetamine.

The Department filed a subsequent petition alleging four counts under section 300, subdivision (b). In particular, as amended, count b-4 alleges "On or about 2/27/13 and other occasions [*sic*] the []children H[.]Q[.] & Bianca R[.] were exposed to a violent confrontation between the adult sibling [E.] L[.] and his girlfriend in which the [E. L[.] punched, kicked, slapped and called disparaging names to his girlfriend. Further, on

3

prior occasions, the []children . . . were exposed to violent confrontations between the adult sibling [E/] L[.] and his girlfriend. Such violent altercation(s) on the part of the child's/children's adult brother [E/] L[.] endangers the []children's physical and emotional health and safety and places the []children at risk of physical and emotional harm, damage and danger. In addition Mother . . . allowed the adult brother to remain in the home [and] subject the children to violent and frequent altercations. . . ." The children were detained.

H.Q. stated to the Department that " 'We were taken away because of the violencia domestica. It is my brother's fault. I saw him hitting his girlfriend and she hit him and once bit him. He would yell at her [and] call her "bitch." I saw him hit her and push her all the time. He would punch her in the arm, back and face. My mom would tell him to stop but he would not.' " Bianca stated, " '[E.] and his girl would fight. I saw them do it 3 or 4 times in front of me and their baby in our house. He did violencia domestica in front of me and my sister and my mom. He would not listen to my mom, when she told him to stop.' " Daughter Joana L. stated " 'According to my mom [E.] is an Angel and can do no wrong. Yeah, he would beat on his girl and my mom did nothing.' " Bianca's father stated, " 'It hurts her to kick him out. That boy is golden. He beats his girlfriend and my daughters are taken away.' "

Mother moved to a new residence. Pursuant to juvenile court orders, the Department investigated mother's new place and whether E. had access to mother's home. The investigating social worker observed . eating and "simply hanging out at his Mother's residence." Mother reported she had difficulty keeping E. out of her home because she was his mother and her children disobey her. The social worker concluded that mother did not have the knowledge or ability to protect the children as she continued to allow E. in the home. Also, the social worker believed someone, presumably E., was smoking marijuana outside the home during the visit. Mother missed a random drug test and tested positive twice in July 2013 for methamphetamines and amphetamines. The Department recommended not returning the children to mother's care.

4

The juvenile court sustained all four of the subsequent petition's counts and declared H.Q. and Bianca described by subdivision (b) of section 300. The court then ordered the children removed from mother's custody (§ 361, subd. (b)) and awarded mother reunification services while maintaining wraparound services. Mother's timely appeal followed.

CONTENTIONS

Mother contends there is insufficient evidence to support the order sustaining the subsequent petition and removing the children from her custody.

DISCUSSION

1. *Substantial evidence supports the juvenile court's finding Bianca and H.Q. are defined by section 300, subdivision (b).*

When a child has already been declared a dependent of the juvenile court and the social services agency learns of new facts or circumstances, other than those under which the original petition was sustained, sufficient to declare the child to be described by section 300, the agency must file a subsequent petition. (§ 342.)

As the order sustaining a petition must be supported by a preponderance of the evidence (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193), so too must the order sustaining a subsequent petition be supported by a preponderance of the evidence. (§ 342 ["All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."].) On appeal, we are guided by the substantial-evidence standard: "We review the record to determine whether there is any substantial evidence, contradicted or not, which supports the court's conclusions." (*In re Kristin H.*, *supra*, 46 Cal.App.4th at p. 1649.)

Subdivision (b) of section 300 authorizes dependency jurisdiction when "[t]he child has suffered, *or* there is a substantial risk that the child *will suffer*, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." (Italics added.) The juvenile court here sustained count b-4 alleging, as facts different from those in the original petition, that the children

5

were exposed to violent confrontations, on February 27, 2013 and on other occasions, between E. and his girlfriend and that mother allows E. to remain in the family home.

Mother admits the evidence supports the finding under count b-4. Her brief admits that "the girls were exposed to some domestic violence between E. and his girlfriend" and acknowledges *In re Heather A.*, *supra*, 52 Cal.App.4th 183, which stated that "domestic violence in the same household where children are living *is neglect*; it is a *failure to protect* [the children] from the *substantial risk* of encountering the violence and *suffering serious physical harm or illness* from it. Such neglect *causes* the risk." (*Id.* at p. 194, italics added.)

Mother contends that she did not perpetrate and was not a party to the violence. However, mother need not have been the perpetrator for the children to be described by section 300, subdivision (b). "[D]omestic violence in the . . . household where [the] children are living" is sufficient. (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 194, italics added.)

Mother argues that she acted protectively "as she tried to stop the violence" by calling the police and wraparound services. Yet, the record shows that in the same statement in which mother reported she told E. to stop his violent behavior, she went on to declare, " '[b]ut that girl stabbed her finger nail in his [E.'s] back and he had skin hanging. *He had to defend himself.*' " (Italics added.) In other words, mother also *justified her son's violence as necessary*. That mother told E. to stop his violent conduct is laudable, but it does not negate the fact that the children were *exposed* to domestic violence that places them at risk of serious physical harm or illness.

Relying on *In re Daisy H.* (2011) 192 Cal.App.4th 713, mother argues she has moved to a new residence and E. "no longer live[s] with her." She observes E. only visited alone "and there were no reports of him perpetrating any domestic violence in Mother's new residence" with the result there is no evidence that the children are still at risk of harm from his domestic violence.

*Daisy H.* stated, "[p]hysical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence

that the violence is ongoing or *likely to continue* and that it directly harmed the child physically or placed the child at risk of physical harm." (*In re Daisy H.*, *supra*, 192 Cal.App.4th at p. 717, italics added.) In *Daisy H.*, the evidence was insufficient to support a finding that past or present domestic violence between the parents placed the children at a current substantial risk of physical harm because the father had pulled the mother's hair and choked her "*seven years* before the petition was filed." (*Ibid.*, italics added.) *Daisy H.* is distinguished on its facts.

Ample fresh evidence supports the juvenile court's finding true the allegations of count b-4 that E.'s violence is *likely to continue* and that mother is unable to protect the children from him. Although mother has moved to a new residence and she claims E. no long lives with her, the evidence supports the juvenile court's implied conclusion otherwise. During a visit to mother's new residence, the social worker found E. eating and "hanging out." Even if E. no longer lives with her, mother admitted she has difficulty preventing him from coming over and that he disobeys her orders. E. is an adult whom she fears and adores. Mother defends his violence while ignoring the risk that the violence poses for her other children. In short, the evidence shows that mother is either unwilling or unable to keep E. and his violence away from the children or the family home.

As a preponderance of the evidence supports the court's findings under section 300, subdivision (b) based on count b-4, we need not address the sufficiency of the evidence to support findings as to the remaining three counts concerning mother's drug abuse, E.'s cultivation and abuse of drugs in the children's presence, or mother's allowing Bianca's father access to the children when he has a longstanding history of violent crimes, possessing firearms, and drug trafficking. "Section 300, subdivisions (a) through (j), establishes several bases for dependency jurisdiction, any one of which is sufficient to establish jurisdiction. (§ 300.)" (*In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1045; see, e.g., *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.) There being substantial evidence to support the court's finding as to section 300, subdivision (b) based

on count b-4, the preponderance of the evidence supports the jurisdictional findings and order sustaining the subsequent petition.

      2. *Substantial evidence supports the removal order.*

      Section 361, subdivision (c)(1) reads in relevant part, "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."

      "Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and that there are no reasonable means by which the child can be protected without removal. [Citations.] The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances. [Citation.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917; *In re John M.* (2012) 212 Cal.App.4th 1117, 1126.) Although in the juvenile court, clear and convincing evidence of abuse or neglect is necessary to remove a child from a parent's physical custody, on appeal, we apply the substantial-evidence standard of review to determine whether there was clear and convincing evidence supporting the removal order. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.)

      Mother contends there is no evidence of "potential harm" to the children if they are returned to her custody and the juvenile court should have resolved any doubt in favor of family preservation services. Mother observes that the girls both wanted to visit her and were "suffering greatly in foster care."

Substantial evidence supports the removal order under section 361, subdivision (c)(1).  Mother overlooks the fact that the girls were already dependents of the court for a year before the filing of the section 342 petition.  The juvenile court sustained not only an original petition but the subsequent petition also.  This constitutes prima facie evidence that the children cannot safely remain in her home.  (§ 361, subd. (c)(1).)  In addition, family preservation clearly did not work.  The family had been receiving such services since the original petition was sustained.  Yet, that disposition plan appeared not to be effective.  The girls responded for a short period and then reverted back to their old ways, disregarding mother's rules, acting disrespectfully to, and bullying, mother.  Mother was unable to protect the children; she even admitted she was overwhelmed.  The girls were "often" disheveled, frequently absent from the house without mother's permission or even her knowledge, and were exposed to mother's excessive drug use.  It was during the period of wraparound services that mother permitted marijuana to grow in the back yard, allowed drug paraphernalia in the home, permitted Bianca's father to have access to the children, defended E.'s right to engage in domestic violence in front of the girls, and allowed E. to "hang[] out" in her new home.  Substantial evidence supports the juvenile court's finding that the children cannot be safely returned to mother's care, and that there are no reasonable means by which the children's physical health could be protected without removing them from mother's physical custody.  (§ 361, subd. (c)(1).)

9

DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


KLEIN, P. J.


KITCHING, J.

10