Filed 5/14/15  In re Y.A. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Y.A., a Person Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,       Plaintiff and Respondent,       v. J.A.,       Defendant and Appellant. | B259476 (Los Angeles County Super. Ct. No. CK95693) |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

Juan A. (father) appeals the juvenile court's October 8, 2014 dispositional order, issued upon a supplemental petition (Welf. & Inst. Code, § 387)[1] by the Los Angeles County Department of Children and Family Services (DCFS), removing Yasmin A. from father's custody and ordering a permanent plan of foster care.[2]

The essential issue presented is whether the removal order is supported by substantial evidence.

We conclude the record supports the juvenile court's determination and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Earlier proceedings.*

On September 18, 2012, father reported to DCFS that Yasmin A. (the minor) (born in December 1998) was missing and that she had not returned home.

On September 21, 2012, at a team decision making (TDM) meeting with DCFS, father described the minor as a difficult child. He stated she had been posting inappropriate messages on Facebook, such as seeking crystal meth, and that she skipped school every Tuesday. Father urged that the minor be placed in shelter care because he did not have any other options to keep her safe.

On September 26, 2012, DCFS filed a dependency petition under section 300 on behalf of the minor and her two siblings. The detention report, filed that same day, stated, inter alia, mother resided in Chicago, had not seen the children in four years, and was not available to make a statement.

The jurisdiction/disposition report indicated that on October 12, 2012, the minor was caught with a stolen cell phone and the following day was suspended from school for

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.  Also, all rule references are to the California Rules of Court.

[2]     A dispositional order, issued upon a supplemental petition pursuant to section 387 removing the child from the home, is appealable as a judgment.  (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 556, fn. 2.)

possession of alcohol. She accrued six days of suspensions in the first month she was enrolled at a new school.

On October 29, 2012, the juvenile court sustained the section 300 petition solely with respect to DCFS's allegations that father had failed to protect the minor from the physical abuse of the paternal aunt and uncle, had failed to protect the minor from the paternal grandmother, and had emotionally abused the minor. The minor was removed from parental custody and ordered suitably placed, while her two siblings were placed in father's home under DCFS supervision. The court ordered reunification services with respect to the minor and family maintenance services with respect to the two siblings.

On December 31, 2012, the minor ran away from her foster home. After returning home, she ran away again the following day. The foster mother reported that she had grounded the minor a few days earlier because the minor had used Facebook to recruit friends to bring her drugs at three o'clock in the morning.

On January 9, 2013, a high school campus police officer called DCFS advising that he had the minor in custody, and that in 18 years working as an officer, he had "never met such a disrespectful and dishonest minor." When father arrived, the officer kept the minor in handcuffs because she appeared to want to physically assault father.

On January 10, 2013, DCFS requested and obtained a protective custody warrant for the minor.

The minor was placed with a maternal cousin, ran away again, and was placed in a girls' group home on April 15, 2013. DCFS concluded the minor could no longer be placed in a foster home due to her behavior and multiple AWOL episodes. On April 21, 2013, the minor went AWOL from the group home for two days, and she ran away again on May 1, 2013. A missing person warrant was generated.

On a monthly basis, DCFS contacted the minor's parents to request information regarding the minor's whereabouts. The parents reported the minor allegedly was in San Francisco but did not disclose how they obtained that information.

3

On October 9, 2013, DCFS received a call from Sylmar Juvenile Detention Center, which reported the minor had been picked up for trespassing. The next day, a probation officer reported the minor had made a court appearance and that she was pregnant.

On October 28, 2013, DCFS recommended that family reunification services be continued.

On November 26, 2013, the minor was released from juvenile hall and placed in foster care in California City, due to the lack of openings at group homes for pregnant teens, and no available foster homes in Los Angeles County which could accommodate a high risk pregnant teen with AWOL history.

The status review report filed March 7, 2014, indicated no reunification progress had been made because the minor had been AWOL for most of the 18-month period. At this time, the minor was eight months pregnant and was at very high risk for premature labor.

On March 19, 2014, the minor gave birth to a baby boy and both reportedly were doing well.

On April 18, 2014, the court ordered the minor returned to the home of parents for a 29-day visit. At this time, the minor's mother was living in the family home with her new partner, while father came to the house on the weekends and stayed in the garage.

On May 8, 2014, the minor told the social worker that she wanted to stay with her parents, return to school and take care of her baby. DCFS recommended that the minor be returned to her parents' home, with family maintenance services.

On May 14, 2014, the court found the permanent plan of return to home of parents was appropriate and that was ordered as the permanent plan.

The court scheduled a judicial review hearing for November 12, 2014.

2. *The instant proceeding.*

On August 25, 2014, the minor again went AWOL, leaving the family home without father's permission. She walked out the front door with her baby while father

4

was in the back yard. They had argued about her schooling; she wanted to attend regular school but father wanted to home school her. The minor also was upset because father had refused her request to use his cell phone. After the minor departed, father tried to call her, but she did not answer and he did not know where she was. He filed a police report.

DCFS determined that it would remove the baby from the minor's care immediately due to exigent circumstances. Father told DCFS that he wanted to care for the baby but "he could no longer care for the mother [i.e., the minor] due to her defiant and disrespectful behavior." Father stated, " 'I can't work because I am always taking care of her . . . . I need to work and move on with my life.' " The minor indicated she wanted to be with her baby, but she did not want to return to father. The minor's mother had recently moved back to Chicago.

On August 29, 2014, DCFS filed the section 387 supplemental petition. DCFS alleged the juvenile court's prior order, i.e., the May 14, 2014 order placing the minor in home of parents, had been ineffective in protecting her because the parents were "unable and unwilling to provide ongoing parental care and supervision of the child, due to the child's behavior problems and runaway behavior. On 08/26/2014, the father requested the child's removal from the father's home and care. Ongoing conflicts exist between the child and the child's parents. Such inability and unwillingness to provide ongoing parental care and supervision of the child, on the part of the parents, endangers the child's physical health and safety and places the child at risk of physical harm and damage."

At the section 387 detention hearing on August 29, 2014, the court made prima facie findings for detaining the minor, finding that remaining in the home was contrary to her welfare. The minor was ordered detained in shelter care, with monitored visits for father, and unmonitored telephone visits for mother.

On September 21, 2014, the minor left the group home, leading to the issuance of another protective custody warrant.

5

On October 8, 2014, DCFS submitted its jurisdiction/disposition report, which provided, inter alia: The minor's whereabouts remained unknown. Father admitted requesting the minor's removal from his home on the date in question, but denied that he was unwilling or unable to care for and supervise the minor and her seven-month-old son. The 22-year-old alleged father of the minor's baby indicated that he was not surprised she had run away, and that she "throws tantrums" when she does not get her way. DCFS recommended the petition be sustained and that family reunification services be provided.

On October 8, 2014, the jurisdictional and dispositional hearing on the section 387 petition came on for hearing. The court indicated its tentative decision was to sustain the petition, order suitable placement, and order a plan of long-term foster care. The court observed the original 18-month date was March 2014, and the parents had received well over 18 months of reunification services.

The minor's attorney and father's attorney both requested a continuance of the hearing due to the minor's absence. The court denied a continuance, stating that "continuing it isn't going to make it any more likely that the child is available."

The court admitted into evidence, without objection, the October 8, 2014 jurisdiction/disposition report with attachments, and the August 29, 2014 detention report with attachments, and heard arguments of counsel. The court sustained the section 387 supplemental petition, finding the previous disposition "has not been effective in the rehabilitation or protection of the minor."

Moving on to the issue of disposition, father's counsel asked that the minor be placed in father's care: "As [father] states in the jurisdiction report, he can care for [the minor] and [the minor's] child as well."

The minor's attorney submitted the matter for the court's decision without argument, stating that her client was AWOL, and "I'm not sure what her position would be for today, whether she would want to return to father or not."

The trial court found by clear and convincing evidence that the previous case plan had not been successful in ensuring the safety and protection of the minor. It transferred

6

care, custody and control from the parents to DCFS. It found the minor was not adoptable nor was guardianship appropriate. The minor was ordered into a planned permanent living arrangement of long-term foster care with a goal of emancipation by her 18th birthday. The protective custody warrant remained in place. The court scheduled a review of the permanent plan for April 9, 2015. The court added, "Parents can always file a 388 for return to them if and when it's shown that's appropriate and in the child's best interest. [¶] The parents may participate in conjoint counseling with [the minor]."

This appeal followed.

## CONTENTIONS

Father contends the juvenile court erred in not leaving custody of the minor with him.

## DISCUSSION

1. *General principles.*

"A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care. (§ 387; [rule] 5.560(c).) In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child. (§ 387, subd. (b); rule 5.565(e)(1).) If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. (Rule 5.565(e)(2); [citation].) A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists. [Citations.] The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child. [Citations.]" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161, fn. omitted.)

Our role is to "review the court's jurisdictional and dispositional findings for substantial evidence. [Citations.] . . . . [W]e draw all reasonable inferences in support of

7

the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. [Citation.]" (*In re T.W.*, *supra*, 214 Cal.App.4th at pp. 1161-1162.)

2. *Jurisdictional finding not in issue.*

As indicated, DCFS filed the operative supplemental petition on August 29, 2014, alleging the juvenile court's previous order placing the minor with parents had been ineffective in protecting her because the parents were "unable and unwilling to provide ongoing parental care and supervision of the child, due to the child's behavior problems and runaway behavior."

Father does not challenge the juvenile court's jurisdictional finding on the section 387 petition, to wit, "[t]he previous disposition of the Court has not been effective in the rehabilitation or protection of the minor." Father acknowledges that "[s]ince the juvenile court already had jurisdiction over [the minor], jurisdiction was not an issue."

Rather, the focus of father's appeal is the dispositional order. Father asserts the juvenile court erred in removing the minor from his custody. According to father, the appropriate disposition would have been to return the minor home under supervision of the dependency court with ongoing family maintenance services, or alternatively, under the supervision of the delinquency court. We now turn to that aspect of the trial court's ruling.

3. *Dispositional order removing the minor from father's custody was proper.*

a. *General principles.*

When a "section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361. [Citation.] Before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be

8

protected without removing the minor from the minor's parent's . . . physical custody.' (§ 361, subd. (c)(1); [citation].)" (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

A removal order "is proper if it is based on proof of: (1) parental inability to provide proper care for the minor; and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] *The parent need not be dangerous and the minor need not have been harmed before removal is appropriate*. The focus of the statute is on averting harm to the child. [Citation.]" (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163, italics added; accord, *In re J.S.* (2014) 228 Cal.App.4th 1483, 1492 [same]; *In re T.V.* (2013) 217 Cal.App.4th 126, 135-136 [same]; *In re John M.* (2012) 212 Cal.App.4th 1117, 1126 [same].)[3]

b. *Removal order is supported by substantial evidence*.

Here, the removal order is supported by proof of father's inability to provide proper care for the minor, and potential detriment to the minor if she were to remain with father. (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

The evidence, set forth in some detail above, supports a finding that the previous disposition had been ineffective in protecting the minor and that father was unable to provide proper care for the minor, putting her at risk of harm if she remained with him. (§ 361, subd. (c)(1).) The simple fact is that as of the hearing date on the section 387 petition, October 8, 2014, the minor's whereabouts remained unknown, six weeks after

---

[3]     Father invokes *In re Precious D*. (2010) 189 Cal.App.4th 1251 (*Precious D*.) which held "parental unfitness or neglectful conduct must be shown in order to assert dependency court jurisdiction under that part of section 300(b) providing for jurisdiction based on the parent's 'inability . . . to adequately supervise or protect the child.' " (*Id*. at p. 1254; contra, *In re R.T.* (2015) 235 Cal.App.4th 795, 805 [disagreed with *Precious D*. and held "no showing of parental blame is required before a juvenile court may assert dependency jurisdiction over a child at substantial risk of physical harm or illness due to her parent's 'failure or inability . . . to adequately supervise or protect' her"].) These decisions are inapposite because they involve the assertion of dependency jurisdiction over an incorrigible teenager. (*Precious D*., *supra*, at pp. 1253, 1260; *In re R.T.*, *supra*, at p. 805.) Here, in contrast, the issue is *disposition*, specifically, removal from parental custody after the juvenile court has sustained a supplemental petition under section 387.

she left home with her baby and without father's consent. These circumstances support the conclusion that the previous disposition, placing the minor with father, failed at protecting the minor, and that father was unable to provide proper care for the minor, putting her at risk of harm if she remained with him.

Further, father now asserts the juvenile court erred in removing the minor. However, on August 26, 2014, three days before DCFS filed the supplemental section 387 petition, it was father who "requested the [minor's] removal from [his] home and care." He stated he could no longer care for her due to her disrespectful and defiant behavior. This was a reiteration of events two years earlier – on September 2012, father stated at a TDM meeting that he had tried "everything to get [the minor] to behave better," and he requested at that time that the minor be placed in shelter care "because he didn't have any other options to keep her safe."

During the two-year interim, family reunification services were provided, although they were hampered by the minor's running away numerous times. During that time frame, she became pregnant at age 14. The record supports the conclusion that despite father's best efforts, he was unable to provide the necessary supervision to keep minor safe. Viewing the record in the light most favorable to the juvenile court's ruling (*In re T.W.*, *supra*, 214 Cal.App.4th at pp. 1161-1162), we reject father's challenge to the sufficiency of the evidence to support the order removing the minor from his custody.

c. *Alternatives to removal*.

The record also supports the juvenile court's finding that reasonable efforts had been made to prevent or eliminate the need for the minor's removal from father's custody. As the juvenile court noted, reunification services had been afforded for more than 18 months, to no avail.

Nonetheless, father asserts there were workable alternatives to removal, such as returning the minor to his custody under the supervision of the dependency court with ongoing family maintenance services, or under the supervision of the delinquency court.

10

Although the juvenile court must consider alternatives to removal, it has broad discretion in making a dispositional order. (*In re Cole C*. (2009) 174 Cal.App.4th 900, 918.) Given this record, the juvenile court reasonably could conclude that a dispositional alternative less drastic than removal would be ineffective.

## DISPOSITION

The juvenile court's October 8, 2014 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.