Filed 5/27/26 In re E.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.S. et al., Persons Coming Under the Juvenile Court Law. | |
| S.D. COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>F.S. et al.,<br><br>    Defendants and Appellants. | D087464<br><br>(Super. Ct. No. J521696A-D) |

APPEAL from a judgment of the Superior Court of San Diego County, Alexander M. Calero, Judge. Affirmed.

Nita Mehta under appointment by the Court of Appeal, for Defendant and Appellant, K.R.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant, F.S.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, Indra N. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

K.R. (Mother)[1] appeals the juvenile court's dispositional orders removing her four children from her physical custody under Welfare and Institutions Code[2] section 361, subdivision (c)(1). She contends that substantial evidence did not support the children's removal and that there were reasonable alternative means of protecting them. We conclude substantial evidence supports the juvenile court's dispositional orders and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Events Leading to the Petition

Mother has three minor children with Father: E.S. (age 13), Es.S. (age 7), and L.S. (age 7).[3] Mother has another minor child, A.C. (age 15), whose biological father is deceased. In 2015, Mother and Father had a violent argument in the presence of A.C., E.S., and two older (now adult) siblings that resulted in Father being arrested and Mother obtaining a temporary restraining order. This incident prompted an unsuccessful voluntary case with the San Diego Health and Human Services Agency (Agency). The

---

[1]    F.S (Father) filed an appeal that was dismissed under *In re Sade C.* (1996) 13 Cal.4th. 952, 954. Because Father is no longer a party to this appeal, we discuss him only when relevant.

[2]    Further undesignated statutory references are to the Welfare and Institutions Code.

[3]    Our decision reflects the children's ages at the time of the contested jurisdiction and disposition hearing on January 9, 2026.

parents made minimal progress and Father moved back into the home and was not receptive to treatment for domestic violence.

Mother and Father separated in 2023 but remained in contact.

Between February 2025 and September 2025,[4] the police responded to 12 incidents involving Mother, Father, and Mother's boyfriend, E.H. In February, Mother called Father for help because E.H. was blocking Mother's vehicle. When Father arrived with the children, E.H. sprayed pepper spray through an open car window, causing E.S. to have trouble breathing. Mother was granted an emergency protective order against E.H. In March, a witness saw Mother push and strike E.H. several times while outside. Mother ran into her apartment and E.H. banged on the door saying, "I'm going to kill you" while the children were in the living room. In May, when the children were at home, Father discovered E.H. in Mother's room and struck him in the face five times. A.C. had to physically intervene. In June, after an altercation in the presence of the children, Mother was granted an emergency protective order against Father and later obtained a criminal protective order (CPO) against him. In July, in the presence of A.S., Father grabbed Mother, pulled her toward him, and shoved her with both hands. In August, E.H. kicked in Mother's apartment door while Mother, L.S., and Es.S. were inside. In September, after an argument with Mother during a car ride, Father prevented Mother from leaving the car, drove very fast, and threatened to kill them both.

---

[4] All dates herein are for the year 2025, unless otherwise specified.

## B. Petition and Detention Hearing

On September 29, the Agency filed juvenile dependency petitions under section 300, subdivision (b)(1) alleging all four children had suffered or there is a substantial risk that the children will suffer serious physical harm or illness as a result of the failure or inability of their parents to supervise or protect them.

At a detention hearing on October 1, the court made prima facie findings on the petitions. The court ordered the children detained with Mother under strict conditions that both parents abide by the CPO, have no contact in the children's presence, and exchange the children at the Chula Vista Police Department. The court ordered Father's visitation unsupervised but prohibited Father from transporting the children to school. The court also instructed Father to use a food delivery service for all food deliveries to Mother and children.

At a special hearing on October 13, the Agency reported that the parents were violating the court's orders and the CPO. Specifically, Father drove the children to school, and the parents did not exchange the children at the Chula Vista Police Station. The court instructed the parents to modify their conduct. It rejected, however, the Agency's recommendation to detain the children with a relative.

## C. Initial Jurisdiction and Disposition Hearing

In its jurisdiction/disposition report, the Agency expressed concern over Mother's long history of domestic violence and continued violent altercations in the presence of the children, despite having participated in services in the past. In addition to the 12 reported incidents between Mother, Father, and E.H., it alleged at least 10 unreported incidents.

4

At the initial jurisdiction and disposition hearing on October 22, Mother requested modification of the protection orders to allow parents to better coordinate with transporting the children. The court clarified that the CPO contains an exception to the "no contact" rule, allowing for peaceful contact only for the safe exchange of children and court ordered visits. It reminded the parties that the criminal court, not the juvenile court, has the authority to modify the CPO. The court scheduled a pretrial conference and a contested jurisdiction/disposition hearing.

### D. Special Hearing

At a special hearing on December 3, the Agency requested the children be detained outside Mother's care. It reported that Mother violated the CPO by meeting with Father and the children at a pumpkin patch and later at a mall. On another occasion, Father chased Mother, Mother's new boyfriend, and the children in his car. A few days later, while Mother was driving with the children, a police officer pulled her over and handcuffed her because Father reported the car as stolen. Mother also reported Father was following them and he had threatened to take the car because she was not being intimate with him. Mother admitted communicating with Father when she needed money.

The Agency reported that on October 31, Mother and children moved into a domestic violence shelter.

Based on the continued altercations between the parents in the presence of the children and violations of the CPO and court orders, the court found detention with Mother was contrary to the children's welfare and there is a substantial danger to the physical health of the children or they are suffering severe emotional damage. It found there were no reasonable means by which the children's physical or emotional health may be protected

5

without removing the children from Mother's physical custody.  The court also found substantial evidence that Mother would flee the jurisdiction of the court.  The court ordered the children detained in the care of their adult brother and ordered supervised visitation for Mother.

### E.  Contested Jurisdiction and Disposition Hearing

At the jurisdiction and disposition trial on January 9, 2026, the court admitted the Agency's detention and jurisdiction/disposition reports, including addendums.[5]  The Agency reported that Mother had attempted to pick up the children from after-school care without the caregiver sibling in violation of the court's order.

After hearing the argument of counsel, the court sustained the petitions and made true findings on section 300, subdivision (b)(1), declared the children dependent, and found by clear and convincing evidence that (1) there is a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children" if returned to their parents; and (2) there was "no reasonable means by which the children's health [could] be protected without the removal."  The court also granted a one-year juvenile restraining order protecting the children from Father.  It ordered ongoing removal from parents and supervised visitation for Mother.  On appeal, Mother challenges the court's dispositional orders of removal.

---

[5]  The court observed that two addendum reports dated January 9, 2026, were filed.  It did not receive into evidence the second report because it only contained recommendations.

## DISCUSSION

### A. Legal Principles

A juvenile court has "broad discretion" to determine a child's best interest when crafting a disposition order. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.) The court, however, may not remove a child from a parent's physical custody unless it "finds clear and convincing evidence . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home, and there are no reasonable means by which the [child's] physical health can be protected without removing the [child] from the [child's] parent's . . . physical custody." (§ 361, subd. (c)(1).)

For removal, or continued removal as in this case, there is no requirement that the parent be dangerous or that the child suffer harm. (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126 (*John M*).) Instead, section 361, subdivision (c), focuses on " 'averting harm to the child.' " (*Ibid.*) In determining whether removal is necessary, " '[t]he court may consider a parent's past conduct as well as present circumstances. [Citation.]' " (*Ibid.*)

We review the court's decision for substantial evidence, keeping in mind that the juvenile court is required to make a dispositional finding by clear and convincing evidence. (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.) The question before us is " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.) "[T]he appellant bears the burden of

7

showing ' " 'there is no evidence of a sufficiently substantial nature' " ' to support the dispositional removal order." (*In re L.O.* (2021) 67 Cal.App.5th 227, 245.)

## B. Disposition

Mother challenges the court's finding that returning the children home would pose a substantial danger to their "physical health, safety, protection or physical and emotional well-being." (See § 361, subd. (c)(1).) Mother also contends there was no clear and convincing evidence to support its related finding that "no reasonable means" existed to protect the children's physical health short of removal (see *ibid.*), since she had secured housing in the domestic violence shelter where the children also could live. We disagree.

Substantial evidence supports the court's finding that placement with Mother created a risk to the children's physical health, safety, and well-being. As early as 2015, Mother exposed her minor children to domestic violence between herself and Father. Mother's post-separation conflict between Father and E.H. was frequent and dangerous—including 12 reported police-involved incidents and at least 10 unreported incidents in eight months of 2025—and the conflicts routinely involved the children. Mother violated the court's orders by contacting and spending time with Father in the children's presence at a mall and a pumpkin patch. Her continued reliance on Father and her disregard of court orders, including the CPO, indicates that Mother has yet to understand the risk of harm to the children caused by her ongoing involvement with Father. (See *John M.*, *supra*, 212 Cal.App.4th at p. 1126 [the focus of the removal statute is to avert harm to the child].)

The juvenile court also reasonably found, by clear and convincing evidence, that no reasonable alternative short of removal from Mother's

8

custody would adequately protect the children. Numerous alternatives were extended to Mother, such as the children's initial detention with Mother, the court's protective orders, and the CPO. Mother continued to violate the protective orders and have prohibited contact with Father which led to altercations with Father in the presence of the children. While Mother is herself a victim of domestic violence, her repeated disregard for the harmful consequences of maintaining contact with Father—thereby enabling his continued control and influence—demonstrates an indifference to the children's safety and emotional well-being.

We are not persuaded by Mother's contention that the children's removal was unnecessary because she could care for them at the domestic violence shelter. At the time of disposition she had not yet started her parenting class and had only participated in a few domestic violence group therapy sessions with the provider. Although Mother recently took steps to distance herself from Father by moving into a domestic violence shelter, the Agency reported that Mother still failed to understand the protective issue and gain insight. Because Mother was only in the early stages of addressing the protective issue that necessitated the children's removal, it was reasonable for the juvenile court to continue removal of the children from Mother.

The juvenile court has broad discretion to determine what would best serve and protect the child's best interests (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863), and its conclusion that no reasonable means were available to protect the children without removing them from the Mother's custody is supported by substantial evidence on this record. (See *John M.*, *supra*, 212 Cal.App.4th at p. 1126.)

9

## DISPOSITION

The dispositional orders are affirmed.

KELETY, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.