Filed 10/9/14  In re Mia H. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re MIA H., a Person Coming Under the Juvenile Court Law. | B254282 (Los Angeles County Super. Ct. No. DK01641) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MIGUEL H., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Anthony Trendacosta, Juvenile Court Referee.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court asserted jurisdiction over nine-year-old Mia H., detained her from her father, and released her to the care of her mother after the court determined her father sexually abused an unrelated 15-year-old girl.  The father appeals from the court's jurisdictional and dispositional orders, contending substantial evidence did not support the court's order adjudging Mia a dependent of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse).[1] He also contends the dispositional order removing Mia from his custody was not supported by substantial evidence and should be reversed.  The mother (Mother) is not a party to this appeal.  We conclude substantial evidence supported the court's jurisdictional and dispositional orders and affirm.

### BACKGROUND

**A.  The section 300, subdivisions (b) and (d) petition**

On October 7, 2013, the Department of Children and Family Services (DCFS) filed a section 300 petition on behalf of Mia and her brother Michael.  The petition ultimately was dismissed as to Michael.  As amended and sustained on January 29, 2014, the petition alleged under section 300, subdivisions (b) and (d) that in July 2013 Miguel H. (Father) sexually abused an unrelated 15-year-old girl, Allison O.

The facts available to the court were as follows.  In July 2013, Father, a youth ministry advisor, was alone with Allison, against church rules.  He was going to Home Depot to buy supplies for a church project.  She asked if she could ride with him, and he allowed her to.  On the way, Father pulled Allison's shirt and bra strap down, exposing the upper portion of her breast, massaged her shoulders, and asked her if it "felt good." Allison later told DCFS "'it did not feel right'" and "'[she] didn't know what to do.'"

Later that month, Father left a church meeting to get coffee for his wife.  Allison asked if she could ride along.  He again allowed her to do so, contrary to church rules.  In the car, Father began touching Allison on her legs and rubbing her stomach.  He untucked her shirt and asked her to show him her belly, knowing she wanted to pierce her navel.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Father also asked to take a picture of Allison's belly, which she refused to allow. Father rubbed her belly and put a finger in her waistband, touching her bare hip. While rubbing her stomach, he jokingly and in a flirtatious manner called her "'gorda,'" which means "'fatty'" in Spanish. He massaged her thighs and legs, offered to "tug" her shirt back down into place, and did so even though she said she could do it herself. Allison felt violated and very uncomfortable.

Allison was disturbed by Father's actions and, the day after the coffee incident, reported them to her mother. Allison showed her mother how Father "was 'massaging' her upper hip." In August 2013, Allison reported both incidents to the police. As a result, Father was arrested for violating Penal Code section 647.6, molesting a minor.

After Allison's mother reported the coffee incident to her counselor, the counselor reported the incident to the pastor of the church. The pastor discussed the incident with Allison and her mother and then confronted Father separately. Father admitted immediately that he had committed the acts alleged by Allison.

Although he admitted he had acted in the manner Allison described, he pointed out to DCFS that "'I never once asked [Allison] to go with me. She always found a way to be where I am.'" He said she "'jumped up and said she was coming with me'" at the time of the coffee incident and also "followed" him when he was going to drive to Home Depot. He stated she "'insinuated things towards me . . . .'" He said Allison had asked him to touch her belly "'a couple of times . . . and [he] said no.'" She had also asked him for massages, and he had massaged her foot in the presence of her mother. He stated Allison was "'wearing really tight shorts'" when they went to get coffee. After they got coffee, "'[s]he changed into a 2 piece suit and she laid down in front of us in my direction and I know regardless, if she would have gone naked in front of me, I should not have done what I did . . . .'" He claimed to have acted out of "'more of an impulse than anything.'"

Mother, who was a youth director in the church, first learned of the molestation when Father told her about it a week or two after the coffee incident, a day before the pastor scheduled a meeting among the pastor, Father, Mother, Allison, Allison's mother,

3

and a counselor. Mother stated Allison "always" wanted to be around Father and "'always'" asked for massages when she had a knot. Mother had massaged Allison in the past when Allison's mother was present. She was angry and disappointed in Father and did not believe what Father did was "'justified,'" even though Allison had asked for massages in the past. Mother stated she "'cannot love' [Father] knowing what he did was wrong'" and did not "'want to be around'" Father during his monitored visits with the minors. Mother did not believe Father had sexually abused Michael or Mia, who was "'daddy's girl.'"

Mia reported she understood the difference between good and bad touching and denied ever having been sexually abused or touched inappropriately by anyone. Michael also reported he had never been touched inappropriately.

**B. Proceedings**

The criminal charges arising out of Father's conduct with Allison were still pending at the time of the juvenile court proceedings. Father had not been charged with sexual abuse on any previous occasion.

On October 7, 2013, the minors were detained from Father and released to the care of Mother. Mother and Father were ordered to participate in individual counseling and family maintenance services were provided to the family. On November 25, 2013, DCFS reported in connection with the jurisdictional hearing that Mother and Father participated in parenting classes and marital counseling. Although Father was "eager to return to the family's home," Mother believed it was "premature" for him to return, but hoped the family would reunify after "much healing and counseling."

At the jurisdictional and dispositional hearing on January 29, 2014, the minors' counsel advised the juvenile court that although the minors wanted the petition to be dismissed and Father to come home, counsel joined with DCFS in its argument that the minors were at risk and the petition should be sustained. The court decried the "blame-the-victim mentality that seems to be pervasive in this case." The court observed Father had violated his position of trust with Allison and was in the process of "'grooming'" her for successively serious sexual predations. Had Allison not complained, Father's actions

4

would have proceeded to "penetration" or "more violent molestation." Father had informed Mother of the abuse only because the "you-know-what was about to hit the fan and he wanted to get out ahead of that." The court stated Mia was "certainly at risk" and was "approaching the age of the child who was molested." The court also determined there was no risk to Michael by a preponderance of the evidence and dismissed the petition as to Michael.

The juvenile court determined Mia was a person described by section 300, subdivisions (b) and (d) as alleged in the petition as amended, declared her a dependent of the court, and ordered family maintenance services be provided to the family and enhancement services be provided to Father. Mia was ordered removed from Father's care and to remain placed in the home of Mother. Father was ordered to have monitored visits with Mia. Father appealed.

## DISCUSSION

### A. Standard of review

The juvenile court's jurisdictional finding that the minor is a person described in section 300 must be supported by a preponderance of the evidence. (§ 355; Cal. Rules of Court, rule 5.684(f).) "'"When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]'" [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259.) "[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)

5

**B. Substantial evidence supported the juvenile court's jurisdictional findings under section 300, subdivision (b)**

Father contends the evidence was insufficient to support the juvenile court's jurisdictional findings under section 300, subdivision (b) because his "two 'relatively minor' acts of sexual misconduct, in his car, with an unrelated, 15-year-old girl, who never resided in [F]ather's home, did not place his then nine-year-old daughter, Mia, at a substantial risk of serious physical harm and/or sexual abuse." We disagree.

*1. Section 300, subdivision (b)*

Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."

"A jurisdictional finding under section 300, subdivision (b) requires: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) "[T]he use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1435, fn. omitted.) Thus, jurisdiction may be exercised "either based on a prior incident of harm or a current or future risk." (*Id.* at p. 1435, fn. 5.)

*2. Father admits the misconduct with Allison*

In sustaining the petition as amended, the juvenile court found that Father had sexually abused Allison in the manner she described. Indeed, Father admitted the underlying facts. In his conduct with Allison, Father abused his position of trust as a church youth ministry advisor. The evidence supports the inference drawn by the juvenile court that Father was attempting to "groom" Allison by making increasingly

6

aggressive sexual advances to her while he had her alone in his car. Consequently, there is no doubt substantial evidence supports the court's finding that Father sexually abused an unrelated 15-year-old girl.

### 3. Sexual abuse of an unrelated 15-year-old girl who did not live in the home was probative of substantial risk to Mia

Father urges Mia was not at risk within the meaning of section 300, subdivision (b) because Allison was an unrelated 15-year-old girl who resided outside the home. He argues he never engaged in misconduct with Mia herself and that there is no "'pattern' of sexual abuse with [Allison] which 'mimicked' his interaction with Mia." Neither prior abuse of Mia nor a pattern that "mimicked" his interactions with Mia is a prerequisite to a finding of substantial risk.

That Father abused an unrelated child, but not Mia, is not dispositive. The issue is whether there was substantial risk of harm to Mia. Such risk may be established based on evidence of prior acts. (*In re J.K.*, *supra*, 174 Cal.App.4th at p. 1438.) Evidence that an adult has a "proven record of abusiveness" can suffice to support a finding of substantial danger to a different minor. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, superseded by statute on other grounds as noted in *In re J.K.*, at pp. 1435–1436.) "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

*In re Y.G.* (2009) 175 Cal.App.4th 109 provides guidance. In that case, a mother's physical abuse of an unrelated child who did not live in her home was sufficient to support the assertion of jurisdiction over her minor daughter under section 300, subdivision (b). (*In re Y.G.*, at p. 111.) Division Four of this Appellate District rejected the mother's argument that section 300, subdivision (b) is inapplicable because it omits reference to harm to an unrelated child. The court observed section 355.1 provides, "'Proof that either parent, the guardian, or other person who has the care or custody of a minor who is the subject of a petition filed under Section 300 has physically abused, neglected, or cruelly treated *another minor* shall be admissible in evidence.' (Italics added.)" (*In re Y.G.*, *supra*, 175 Cal.App.4th at p. 116, fn. omitted.)

7

The court in *In re Y.G.* observed, "Depending on the circumstances, a parent's abuse of an unrelated child may well tend to prove that the parent suffers from characteristics that also place the parent's child at substantial risk of similar abuse as a result of the parent's inability to adequately supervise or protect. Thus, the omission in section 300, subdivision (b), of any reference to conduct of the parent with an unrelated child does not mean that such conduct cannot, under any circumstances, be considered at the hearing on the section 300, subdivision (b) allegation. Section 355.1, subdivision (b), specifically provides to the contrary." (*In re Y.G.*, *supra*, 175 Cal.App.4th at p. 116.)

Indeed, permitting "a finding of danger to the parent's child based on evidence of conduct with an unrelated child is consistent with the broad purpose of dependency law: 'to ensure the safety, protection, and physical and emotional well-being of children who are at risk of [physical] harm.' (§ 300.2; see also § 202, subd. (a).) Implementation of this purpose requires the trial court to consider a broad class of relevant evidence in deciding whether a child is at substantial risk from a parent's failure or inability to adequately protect or supervise the child. Whether evidence of particular instances of misconduct involving unrelated children is sufficiently relevant to outweigh the danger of prejudice or confusion of issues is left to an exercise of the trial court's discretion (Evid. Code, § 352). In that regard, the juvenile court can consider when the misconduct occurred, whether the unrelated child is of the same age as the child named in the section 300 petition, and the reason(s) for the misconduct. On that basis, the trial court can determine whether it is reasonably likely the misconduct will reoccur and whether that likelihood creates 'a substantial risk that the [subject of the petition] will suffer . . . serious physical harm or illness . . . as a result of the failure of [the] parent . . . to adequately supervise or protect [him or her].' [Citations.]" (*In re Y.G.*, *supra*, 175 Cal.App.4th at p. 116.)

In our view, substantial evidence supported the juvenile court's implied finding the similarities between Allison's and Mia's situations outweighed their differences. Allison and Mia were similarly situated in that Father was in a position of trust and authority as to both of them. In Allison's case, Father betrayed that trust. The juvenile

8

court could have decided that the age difference between the girls was not entitled to much weight because Mia was on the verge of puberty and, as the court noted, was approaching the age Allison was when Father abused her.

Under the foregoing authorities, we reject Father's contention that, because his sexual misconduct was directed at an unrelated minor who did not reside with him, the evidence does not support jurisdiction under section 300, subdivision (b). Accordingly, we need not address Father's argument that certain cases asserting jurisdiction under section 300, subdivisions (b) and (d) are distinguishable because they involved sexual abuse of a *related* minor or one who *resided* with the parent. While those cases support the juvenile court's decision to dismiss the petition as to Michael on the basis Father's behavior was insufficiently aberrant, they do not persuade us that the court lacked substantial evidence to support its assertion of jurisdiction over Mia.

*4. Father's other arguments regarding jurisdiction under section 300, subdivision (b) are unfounded*

Father attempts to show the abuse of Allison is not indicative of risk to Mia because Allison and Mia were not similarly situated. For instance, Allison was older than Mia at the time the abuse occurred. Mia, however, was approaching the age Allison was when Father sexually abused her. Father's disregard of boundaries, inability to control his impulses, and willingness to blame his behavior on Allison leads us to conclude substantial evidence supports the juvenile court's determination the risks posed by Father extended to Mia as well, who was at substantial risk of harm.

Moreover, even if we agree Allison and Mia were not similarly situated because Allison was older and because Mia was a family member who lived with Father, we draw all reasonable inferences in support of the order to conclude substantial evidence supported the assertion of jurisdiction.

Father also argues he "immediately confessed when he was accused." Father's "confession" was not unprompted. It occurred only after Allison and her mother spoke to the pastor. The confession does not provide substantial evidence Mia was not at risk of sexual abuse.

9

**C.  Substantial evidence supported the juvenile court's jurisdictional findings under section 300, subdivision (d)**

Section 300, subdivision (d), provides, in pertinent part, a child may be declared a dependent of the court when:  "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."[2]

Father makes the same arguments as in part B, above, with respect to his contention that the evidence was insufficient to support the juvenile court's jurisdictional findings under section 300, subdivision (d).  The same rationale we applied in part B applies equally to defeat these arguments.  In addition, case law specific to subdivision (d) defeats Father's argument.

In *In re I.J.*, our Supreme Court concluded the juvenile court properly assumed jurisdiction over the father's minor sons pursuant to section 300, subdivisions (b), (d), and (j) where the father was found to have severely sexually abused his daughter.  The court noted that even though the father had not been found to have committed sexual abuse in a prior proceeding, section 355.1, subdivision (d), "is relevant because it evinces a legislative intent that sexual abuse of someone else, without more, at least *supports* a dependency finding."  (*In re I.J.*, *supra*, 56 Cal.4th at p. 779.)  Thus, although Father's criminal case was still pending at the time of the jurisdictional hearing, the juvenile court could have concluded that sexual abuse of an unrelated child was relevant to support a dependency finding under section 300, subdivision (d).

---

[2] Penal Code section 11165.1 provides, in pertinent part, sexual abuse is defined by Penal Code section 647.6, child molestation.

**D. The juvenile court's order removing Mia from Father's custody was proper**

Father contends the juvenile court's dispositional order removing Mia from Father's custody was not supported by substantial evidence. He contends Mia would not have been in danger if Father retained custody because the sexual abuse was directed at an unrelated 15-year-old child outside the family home and reasonable means short of removal existed to keep Mia safe in light of Father's acknowledgment of wrongdoing, his cooperation with the safety plan, and Mother's presence. We disagree.

"Under section 361, subdivision (c)(1), a dependent child may not be taken from the physical custody of the parents with whom the child resides at the time the petition was initiated unless the juvenile court finds by clear and convincing evidence '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.' (§ 361, subd. (c)(1).) 'The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. (§ 361, subd. (c)(1).)' [Citation.] '"The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]' [Citation.] We review a dispositional order removing a child from parental custody for substantial evidence. [Citation.]" (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

We have found the juvenile court's jurisdictional findings were supported by substantial evidence; hence, the findings are prima facie evidence Mia cannot safely remain in the home. As previously discussed, Father's sexual abuse of an unrelated 15-year-old child who did not live with him was evidence of a substantial risk of harm to Mia, supporting the court's order removing her from Father's custody.

Although Father characterizes himself as remorseful and claims Mother's presence would obviate any risk, Father has failed to establish any reasonable means of protection short of removal existed. Father acknowledged his wrongdoing only after it became

11

known to others. As Father acknowledges, he and Mother were separated at the time of the court's order. Mother believed it was premature for Father to return to the family home. She did not wish to serve as a monitor when he was with Mia and believed the family needed counseling and time to heal. Thus, Father's suggestion that he could have returned to the family home to live with Mia under Mother's constant supervision did not provide the court with a reasonable alternative to removal.

We conclude substantial evidence supported the juvenile court's dispositional order removing Mia from Father's custody.

## DISPOSITION

The juvenile court's January 29, 2014 jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED.


MILLER, J.[*]

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

[*] Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.