Filed 11/10/20  In re B.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re B.M., a Person Coming Under the Juvenile Court Law. | C089116 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY, AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.H.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD238208)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

Appellant filed a petition for rehearing with this court.  It is ordered that the nonpublished opinion filed herein on October 20, 2020, be modified as follows:

1. At page 18, modify subheading *A* to read "*Sufficient Evidence to Support Finding of Detriment*":

2.  Following the now modified subheading *A* on page 18, delete the first three full paragraphs and add the following:

Grandmother contends there was insufficient evidence to support the court's finding that return of the minor to her custody would create a substantial risk of detriment to the minor's safety, protection, or physical or emotional well-being within the meaning of section 366.22, subdivision (a). We disagree.

As relevant here, at the 18-month review hearing, the juvenile court must return the minor to the custody of the guardian unless it determines, by a preponderance of the evidence, that return of the minor would create a substantial risk of detriment to the minor's safety, protection, or physical or emotional well-being.  (§ 366.22, subd. (a)(1).)  "The social worker shall have the burden of establishing that detriment."  (*Ibid.*)

"In evaluating detriment, the juvenile court must consider the extent to which the [guardian] participated in reunification services.  [Citations.]  The court must also consider the efforts or progress the [guardian] has made toward eliminating the conditions that led to the child's out-of-home placement.  [Citations.]"  (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400 (*Yvonne W.*).)  Yet, simply complying with the reunification plan by attending the required therapy sessions and parenting classes, and visiting the child does not guarantee return of the child.  (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1143; *In re Joseph B.* (1996) 42 Cal.App.4th 890, 899-901.)  While compliance with the plan is a pertinent consideration, it is not the sole concern for the juvenile court, nor is it determinative.  (*In re Dustin R., supra*, at pp. 1139-1140; *In re Joseph B., supra*, at pp. 899-901.)  The detriment justifying continued removal need not be the same as the initial detriment.  The focus of the decision whether to return the child to the guardian's custody depends on the effect that action would have on the physical or emotional well-being of the child at the time of the review hearing.  (*In re Joseph B., supra,* at p. 899.)  "[I]f returning the child will create a substantial risk of detriment to his or her physical or emotional well-being [citations], placement must continue regardless of whether that detriment mirrors the harm which had required the child's removal from [the guardian's] custody."  (*Id.* at p. 900.)

We review the juvenile court's finding of substantial risk of detriment for substantial evidence.  (*Yvonne W., supra,* 165 Cal.App.4th at pp. 1400-1401.)  "In reviewing the sufficiency of the evidence on appeal, *we look to the entire record to determine whether there is substantial evidence to support the findings of the juvenile court.*  We do not pass judgment on the credibility of witnesses, attempt to resolve conflicts in the evidence, or determine where the weight of the evidence lies.  Rather, we

2

draw all reasonable inferences in support of the findings, view the record in the light most favorable to the juvenile court's order, and affirm the order even if there is other evidence that would support a contrary finding. [Citation.] . . . The appellant has the burden of showing that *there is no evidence* of a sufficiently substantial nature to support the order." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 915-916, italics added.)

3. At page 18, modify the first sentence of the fourth paragraph that reads "Here, there is ample evidence to support the court's order of removal" so that it reads:

    Here, there is ample evidence to support the court's finding of detriment.

4. At page 19, modify the last sentence of the second full paragraph that reads "There is sufficient evidence to support the court's findings regarding removal" so that it reads:

    There is sufficient evidence to support the court's finding of detriment.

5. At page 22, modify the sentence making up the second full paragraph that reads "The court's removal order was supported by substantial evidence" so that it reads:

    The court's order was supported by substantial evidence.

There is no change in the judgment. Appellant's petition for rehearing is denied.


BY THE COURT:

/S/

_____

MAURO, Acting P. J.

/S/

_____

MURRAY, J.

3

/S/

RENNER, J.

Filed 10/20/20  In re B.M. CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re B.M., a Person Coming Under the Juvenile Court Law. | C089116 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY, AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.H.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD238208) |

M.H., paternal grandmother of the minor (grandmother), appeals from the juvenile court's order terminating her reunification services and continuing the minor in out-of-home placement.  (Welf & Inst. Code, §§ 336.22, 395.)[1]  We will affirm the juvenile court's orders.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

# I. BACKGROUND

The six-year-old minor came to the attention of the Sacramento County Department of Child, Family, and Adult Services (Department), Child Protective Services (CPS), in April 2017 when a mandated reporter alleged that grandmother, the legal guardian of the minor and the minor's twin sibling, N.M., physically assaulted the minor and N.M., leaving the minor with a bloody nose and scratches on his body.[2] The minor initially claimed the injuries were the result of abuse by his uncle, his father, and grandmother. It was also reported that the minor, who has an intellectual disability, only attended school sporadically and missed 32 days of school in a six-month period, his grandmother refused to attend his individualized education plan (IEP) meetings or sign IEP documents necessary for his education, and the minor was routinely transported home after school but there was no one to meet him.

Social worker Jones made several unannounced visits to grandmother's address to speak with grandmother and the minor in person, and attempted to contact grandmother by telephone, all without success. On May 18, 2017, the social worker interviewed the minor at school, at which time the minor informed her that grandmother " 'whoops me all the time with a belt' " and showed her what appeared to be scratches on his torso and face. Given the minor's intellectual disability, he was unable to disclose with detail who inflicted the injuries. The minor eventually became distracted and refused to continue the interview. The same day, the minor's elementary school teacher reported that the minor had missed 38 days of school since October 2016, the school had "extreme difficulty" contacting grandmother who "hangs up on staff and refuses to come to the door" when attempts were made to meet with her in person, and grandmother refused to sign the minor's IEP paperwork.

---

[2] N.M. is not a party to this appeal and will only be mentioned where relevant to the issues raised by grandmother.

The Department set an in-person meeting with grandmother for June 12, 2017, and sent her a certified letter to that effect 10 days prior to the meeting. Grandmother neither responded to the letter nor attended the meeting. Thereafter, the elementary school teacher reported the minor had not been at school for more than a week.

On June 16, 2017, after attempting unsuccessfully to contact grandmother, the social worker requested assistance from the police department to complete a welfare check at grandmother's home. Officer Vito reported that grandmother's family was hostile toward him and other officers and refused to allow them to see the minor or his sibling. Two hours later, Officer Vito completed a parole sweep of grandmother's home and found the minor and N.M. with marks and bruises on their bodies. The minor had a bloody nose. When asked how he came to have a bloody nose, the minor pointed to grandmother and said, " 'mom did it.' " N.M. told Officer Vito that the minor missed the school bus and " 'got a whooping for it.' " The minor and N.M. were taken into protective custody. Officer Vito informed the social worker that there were other children in the home ranging in age from 10 years to 16 years old, all of whom were grandmother's biological children. None of those children showed signs of abuse.

The Department filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (a) and (b), alleging ongoing physical abuse by grandmother resulting in visible injuries, and failure by grandmother to respond to the minor's educational needs by refusing to attend IEP meetings for the minor or sign the minor's IEP documentation.

On June 22, 2017, the juvenile court ordered the minor detained in out-of-home placement, limited grandmother's developmental and educational rights as to the minor, and appointed the parents as temporary developmental and educational rights holders and ordered reunification services for grandmother.

On August 15, 2017, the Department filed a first amended petition: (1) striking the physical abuse allegation (§ 300, subd. (a)), modifying the failure to protect allegation

3

(§ 300, subd. (b)) to include an allegation that grandmother left the minor and N.M. with inadequate caregivers who were incapable of supervising and protecting them (i.e., their nine-year-old aunt, M., who reportedly placed the minor on a hot stove resulting in an injury to his back thigh); and (2) adding an allegation pursuant to section 300, subdivision (c) that the minor was at risk of serious emotional harm due to grandmother's failure and refusal to provide the minor with medical, behavioral, and mental health care necessary to address his special needs and her failure to provide the minor with adequate care, supervision, and protection.

The Department filed a motion to terminate grandmother's guardianship of the minor and N.M.

At the jurisdiction/disposition hearing on September 12, 2017, the Department withdrew its motion to terminate the guardianship. All parties submitted on jurisdiction. Grandmother, with the assistance of counsel, signed and filed a waiver of rights indicating she read the amended petition, she understood it, and she submitted on the basis of the social worker's report. After finding grandmother made a knowing, intelligent, and voluntary waiver of rights, the court sustained the allegations in the amended petition. The minor and N.M. were removed from grandmother's custody. The court ordered reunification services for grandmother.

The Department's March 9, 2018 pre-permanency review report recommended continued out-of-home placement for the minor and N.M. and continued services for grandmother and the parents.[3] Grandmother's case plan required her to participate in specialized parenting education, anger management, individual counseling, and conjoint counseling with the minor, as confirmed by the services letter signed by grandmother on

---

[3] The March 9, 2018 report erroneously stated the section 300, subdivision (a) allegation had been sustained, but correctly noted the minor and N.M. were dependents of the juvenile court pursuant to subdivision (b) of that section.

4

August 15, 2017. The plan was modified by the court on September 12, 2017, to specify that the parenting education program should be for special needs children. The Department noted that contacting grandmother proved to be challenging for several months, but eventually grandmother began to respond to voicemail messages and meet with the social worker monthly.

Social worker Ralph initially requested authorization on behalf of grandmother for specialized parenting education for children with special needs through Strategies for Change. However, the request was denied and Ralph was directed to find other specialized parenting classes within the community. She found several potential programs but was advised those services did not provide the required specialized parenting classes. Ralph resubmitted the initial request for Strategies for Change, which was authorized on October 24, 2017. Grandmother was instructed to coordinate scheduling of the parenting classes with the parents' schedule. When the parents failed to respond, Ralph informed grandmother that another request for authorization would be submitted so that grandmother could attend specialized parenting education sessions alone.

Grandmother completed all 12 sessions of her anger management program at Cornerstone Recovery, Inc. on December 15, 2017. However, staff at Cornerstone reported that grandmother denied having anger issues and questioned why she should participate in the program. Grandmother received counseling on assertive communication, which included skills grandmother claimed she already possessed. She also received nonaggressive coping skills, which grandmother stated she would use if she found herself "being stressed out by her grandchildren and/or other family members."

Pursuant to grandmother's request that she be allowed to complete anger management before beginning individual counseling, the Department delayed submitting the request for authorization for counseling until January 9, 2018. Grandmother completed her initial intake and reported she had completed three individual counseling

5

sessions. However, on February 14, 2018, the counselor reported that grandmother failed to show up for three sessions and was removed from the calendar and placed on a wait list. Based on grandmother's failure to participate in individual counseling, the Department concluded it was not appropriate to begin conjoint counseling with the minor.

Grandmother reportedly participated in weekly supervised visits with the minor and N.M.

The Department assessed the risk of returning the minor to grandmother as high due to grandmother's failure to participate in or complete services, her inconsistent visitation, and her continued minimization and refusal to acknowledge responsibility for the minor's removal. The Department recommended an additional six months of services.

At the April 10, 2018 pre-permanency hearing, all parties submitted on the Department's report and recommendations.

In its July 27, 2018 permanency report, the Department recommended that the court terminate services to grandmother and the parents, set the matter for a section 366.26 hearing, and identify adoption or legal guardianship as the appropriate permanent plan.[4] Grandmother's participation in services continued to be inconsistent, as demonstrated by her failure to respond to her individual counseling therapist since April 2018. Her visitation was becoming more consistent, but there continued to be occurrences of grandmother's failure to confirm visits resulting in cancellations. The Department concluded that the risk of returning the minor to grandmother continued to be high due to grandmother's continued failure to complete services, her inconsistent

---

[4] The July 27, 2018 report again erroneously stated the section 300, subdivision (a) allegation had been sustained, but correctly noted the minor and N.M. were dependents of the juvenile court pursuant to subdivision (b) of that section.

visitation, and her continued minimization and refusal to acknowledge responsibility for the minor's removal.

On August 14, 2018, the Department filed a second motion to terminate guardianship. However, the Department withdrew the motion on August 28, 2018, stating it believed the section 366.21 factors could be met in order to continue services to grandmother.

On August 31, 2018, the Department filed an addendum report regarding grandmother's progress in services. It was reported that Ralph was unable to obtain another authorization for specialized parenting education through Strategies for Change due to a staffing change. Thereafter, she referred grandmother to Birth and Beyond and, when grandmother reported she was having difficulty finding an appropriate course there, referred her to a nurturing parent program (for children aged zero to five) with a different provider, scheduled to begin on August 6, 2018. However, grandmother decided against the zero-to-five age class "because it was two times a week" and instead opted for the school-aged class held once a week on Saturdays. She reportedly completed eight sessions of the school-aged parenting class.

Grandmother eventually completed all six remaining sessions of individual counseling within a matter of days on the eve of the September 4, 2018 review hearing. However, the Department recommended an additional course of individual counseling, concluding that rushing to complete the therapy component of her case plan before the hearing did not allow time for the therapist to work with grandmother and provide her with the support and guidance needed to develop the skills and insight necessary to successfully parent the minor. The Department also reported grandmother's visitation had historically been inconsistent and therefore remained supervised. However, grandmother's participation had significantly improved since August 2018, and the Department transitioned her to observed visits. The Department recommended an additional six months of services.

7

*12-Month Review Hearing*

The contested permanency hearing concluded on September 20, 2018. The court found grandmother failed to make substantive progress in services and failed to recognize the issues that led to removal of the minor or address what changes were necessary for return of the minor to her home. The court noted that grandmother's testimony demonstrated that grandmother disputed jurisdiction, blamed others for her predicament, and persisted in claiming the allegations against her were untrue despite having signed a waiver as to jurisdiction. Regarding the allegations related to the minor's schooling and IEP, grandmother minimized those issues and, when asked about meeting the special needs of the minor and N.M., grandmother stated she "did not even know" the minor's special needs were an issue. As a result of grandmother's failure to comply with the minor's IEP and ensure the necessary documentation was current, the minor did not receive the supportive services provided for his mental, physical, social, emotional, and behavioral needs, and engaged in self-harming behavior and aggressive behavior that included yelling, hitting, punching, and kicking N.M. and others. The court also found grandmother minimized or outright denied the subdivision (b) allegations and maintained there was no risk of harm in her home despite that she provided no evidence of how grandmother intended to protect the minor and N.M. from the conduct of the aunt who injured the minor by reportedly placing him on a hot stove. The court concluded return of the minor to grandmother was not appropriate.

With regard to services, the court noted that the delay in individual counseling was due in part to grandmother's request that she only be required to complete one service at a time, and the fact that when she did begin counseling, her participation was inconsistent, and she left the Strategies for Change program earlier than anticipated. The delay was also attributable to the social worker, who was unaware that the court did not sustain the allegations of physical abuse by grandmother and erroneously designed a case plan for grandmother believing the court found those allegations true. The error resulted

8

in a delay in providing services specifically tailored to address the issues that led to removal of the minor. Then, once counseling began, grandmother was provided six sessions in the span of three days. The court found the individual counseling provided to grandmother was not reasonable, as demonstrated by grandmother's testimony that she still did not understand why the minor and N.M. were removed from her care. While grandmother was referred to the proper parenting class late in the case, she failed to engage in the recommended services and decided other classes were more appropriate or convenient. The court found the Department made all reasonable efforts regarding visitation, while grandmother failed to engage in regular visits or take advantage of her time with the minor and N.M. However, the Department failed to include grandmother in any child family team meetings.

The court concluded the Department did not provide reasonable services, found grandmother's progress in services was minimal, and continued services for an additional six months. The court ordered grandmother to comply with the case plan, which "shall include individual counseling to address the issues that led to the children's removal" and "be specific in regard to the parenting deficits that were demonstrated," but not to include conjoint counseling unless and until grandmother demonstrated insight into the conditions that led to removal and articulated her responsibility in that regard. The court further ordered that grandmother be advised of and encouraged to participate in services provided to the minor and N.M. and be given the opportunity to participate in child family team meetings, and that visitation should not be unsupervised until grandmother demonstrated significant progress on the issue of failure to protect the minor and N.M. Finally, the court admonished grandmother to regularly communicate with the Department and attend every visit available to her on a consistent basis.

### 18-Month Review Report and Addenda

The Department's 18-month review report, filed November 30, 2018, repeated its early error by stating again that the section 300, subdivision (a) allegation had been

9

sustained. The report correctly noted the minor and N.M. were dependents of the juvenile court pursuant to subdivision (b) of that section.

The Department filed an addendum report on January 14, 2019. Grandmother reportedly completed her parenting program, attended and participated in all child family team meetings, and participated in five therapeutic visits with the minor and his behavioral specialist. She demonstrated the ability to initiate a setting with structure, limits, and consistent behavioral expectations for the minor, and provide him with assertive redirection and guidance in a nurturing manner as needed. The WRAP-around facilitator opined that grandmother's level of engagement showed promise for continued growth in understanding the minor's behavioral needs and how to address them.

The report also included a counseling report written by Rajeshwari Prasad. Prasad reported grandmother's prognosis was "poor," stating she made minimal progress in sessions and demonstrated a lack of accountability and insight regarding the reasons for CPS's involvement in the matter. Prasad noted grandmother's engagement in counseling sessions consisted of blaming others for CPS's continued involvement with the family rather than taking accountability for her actions, greatly hindering her progress in treatment. Prasad concluded that, without grandmother recognizing and taking responsibility for her part in the case, the "risk for similar incidents to recur remains high." Prasad did not recommend additional counseling to improve grandmother's parenting skills and protective capacity, as grandmother stated she wanted grief counseling to address the loss of the children from her care.

In light of Prasad's conclusions, the Department expressed "significant concerns" regarding grandmother's lack of insight or willingness or ability to ameliorate the issues resulting in removal of the minor and N.M. After 18 months of services, grandmother continued to assert that there were no issues, past or present, with her parenting skills, her disciplinary practices, or her supervision of the minor and N.M. She repeatedly insisted CPS lied about every allegation in the amended petition and steadfastly denied the

10

veracity of those allegations, despite that the petition was sustained. The Department noted the minor and N.M. were young children with significant special needs who would undoubtedly require considerable support and intervention in the future. Grandmother's lack of acknowledgement or significant progress throughout the case raised concerns about her ability to provide the minor and N.M. with the skilled parenting necessary for them to achieve their full potential.

The Department reported the minor was placed in a short-term residential therapeutic facility where his "significant behavioral and mental health needs [were] being addressed." Because the minor continued to require a higher level of care, he was not yet ready to transition to a foster home, and there was no identified person willing or able to provide a permanent home for him. The Department recommended the minor remain in his current placement with a goal of adoption.

### Contested 18-Month Review Hearing

The contested 18-month review hearing commenced on January 15, 2019, and continued for a number of days throughout February and March 2019.

WRAP Facilitator Laura Morris testified that grandmother regularly attended child family team meetings and was open to suggestions from the WRAP team. Morris testified that social worker Ralph was present at child family team meetings to engage grandmother in and provide information about her case plan.

WRAP Family Specialist Jessica Chan testified she was involved in child family team meetings with grandmother, who was receptive to suggestions and very cooperative. Chan testified that grandmother occasionally told the WRAP team she was confused about what she was supposed to do in order to get the minor back. Chan further testified that social worker Ralph was, at times, confrontational and seemed irritated that services were not being met in a timely manner with respect to grandmother's case plan.

Social Worker Sandra Ralph testified she was present at some of the child family team meetings involving grandmother, who seemed engaged with the minor. Ralph

11

testified that the WRAP team felt grandmother was showing signs of progressing with skills and moving in a positive direction. Ralph discussed with grandmother what was required of grandmother as part of her case plan, as did the WRAP facilitator. In particular, Ralph discussed with grandmother why she needed to complete a second round of individual counseling and a second parenting class. They often talked about what was required of grandmother from her case plan, and what was expected with regard to her progress in services in order to move onto the next step of conjoint counseling and unsupervised visits. Ralph also spoke with grandmother about utilizing a cultural broker, something grandmother was not interested in doing.

Ralph testified that, over the course of a year and a half, grandmother repeatedly raised complaints about the minor's removal, arguing the responding officer bribed the minor to say grandmother hit him. When asked why her recommendation to return the minor to grandmother changed following the December 2018 report, Ralph explained that she received Prasad's report about grandmother's individual counseling that indicated grandmother's lack of progress and accountability and Prasad's concern that there was still a risk to the minor. Ralph agreed that grandmother had been unable to progress past her opinion of what happened the night the minor was removed.

Ralph further testified she referred grandmother to individual counseling immediately after the September 2018 hearing. The referral stated the goal was for grandmother to make significant progress in demonstrating her insight and acknowledgement of her role in the minor's removal and understand how her actions contributed to the case. Therapists determined the details of the goal by reviewing the jurisdiction/disposition report and through a conversation with the referring social worker. Ralph believed Prasad received the jurisdiction/disposition report, as referenced in Prasad's report, and Ralph might have had conversations with Prasad or Prasad's supervisor, April Hayes, concerning the specific case plan objectives.

12

Therapeutic Counselor Rajeshwari Prasad testified she provided 10 sessions of therapeutic counseling to grandmother. In preparation for counseling, Prasad reviewed the jurisdiction/disposition report and the August 7, 2018 permanency report. Prasad testified she believed the allegation of physical abuse was substantiated, as was the allegation of failure to protect. With regard to the physical abuse allegation, it was Prasad's understanding that N.M. had scratches on her and a bloody nose, and the minor had burn marks on his buttocks. She based that understanding on what was in the reports provided to her. Grandmother's denial of personally inflicting physical abuse on the minor and N.M. formed part of the basis for Prasad's conclusion that she failed to make progress and continued to pose a risk of harm to the children. Prasad operated on the belief and understanding that grandmother physically abused the minor and N.M.

With regard to grandmother's complaint that Prasad was on her cell phone during counseling sessions with grandmother, Prasad testified she did have her cell phone with her during sessions and occasionally checked the phone for scheduling updates. She noted that therapists were advised to have their phones with them at all times for safety reasons. She denied ever rolling her eyes or displaying negative behavior while in sessions with grandmother.

Prasad stated she believed grandmother would continue to have challenges meeting the minor's basic emotional needs, providing for him, and advocating for his needs in school. During counseling sessions, grandmother claimed social worker Ralph was disrespectful to her and missed monthly appointments with her, and that the minor's group home was responsible for physical injuries to the minor.

When asked what she did to help grandmother develop methods for dealing with stress and the responsibility of parenting two children with special needs, Prasad testified she talked with grandmother about using relaxation techniques such as deep breathing and guided imagery, all of which grandmother was responsive to. Prasad repeatedly mentioned to grandmother her observation that grandmother was blaming others and

asked her to focus her attention on herself and be more reflective. Prasad testified that grandmother continued to be in denial about how her actions led to CPS involvement and grandmother claimed the jurisdiction/disposition report was "all lies." Grandmother did not acknowledge any issues with her parenting, telling Prasad, "[M]y parenting is the bomb. There are no problems with my parenting. All my children, they have good jobs. I have two children who are teachers. One is a nurse at Kaiser." Regarding the incident when the minor was burned, grandmother told Prasad, "CPS wants me to admit to something I didn't do[.] I'm not going to do that." Grandmother claimed the minor's injury to his buttock was the result of climbing out a window and cutting himself on the windowsill. She did not believe the minor's nine-year-old aunt, M., put him on the stove and caused the burn and maintained M. never harmed the minor or N.M. She also claimed she was always present with the children and never left them unsupervised. However, when Prasad asked what she would do differently, grandmother said she would never leave the children unsupervised. Grandmother felt CPS had an issue with her work schedule and said, "[A]pparently my working has been a problem for CPS. I will have to supervise [the children] more. I won't go anywhere."

Prasad testified that grandmother said she felt she had no issues with her ability to protect the minor and claimed she was an overly protective parent, telling Prasad, "I'm what they call a helicopter mom." Prasad discussed the report with grandmother and tried to impress upon her that there was a pattern of leaving the children in situations that exposed them to risk, and it was grandmother's responsibility to protect them.

Prasad further testified that grandmother acknowledged the minor and N.M. had special needs and said they required extra care and patience, but because they were developmentally delayed, they needed more of her attention. When Prasad asked about the minor's IEP, grandmother said she missed only one IEP meeting. Grandmother agreed the minor missed 38 days of school, but claimed the absences were due to the teacher's request that grandmother keep the minor home because he had severe

14

behavioral issues in class. Grandmother felt she was meeting the minor's educational needs and denied ever refusing to attend IEP meetings. She claimed any delay in signing the minor's IEP paperwork was the result of the minor not providing her with the paperwork.

Regarding medical neglect, Prasad testified the grandmother blamed the biological mother for neglecting the minor and N.M. and using drugs while pregnant.

Prasad did not believe grandmother made any progress regarding her protective capacity toward the minor and N.M. She felt grandmother blamed others and lacked the ability to evaluate her own behavior and understand how she contributed to the need for CPS involvement with the children. Prasad believed that, even without the physical abuse allegations, there would be a risk to the minor and N.M. in the future based on grandmother's lack of progress and insight. Prasad had concerns regarding grandmother's ability to be a caregiver to children with special needs, such as the minor and N.M., given grandmother's lack of insight and denials.

Grandmother testified and confirmed she told Prasad the jurisdiction/disposition report was all lies. She testified she told Prasad she always kept an eye on her children and there was never a lack of supervision. She also told Prasad there were no issues with her parenting and she has always been "very overprotective." She stated she never left the minor or N.M. alone with their aunt, and the minor was never burned on the stove. She denied any lack of supervision of either the minor or N.M., or any failure to protect them.

Grandmother admitted the minor "had a lot of days missing from school," but denied telling Prasad it was the teacher's fault. She testified there was only one day when the teacher instructed her to keep the minor home from school. She claimed the minor's father was responsible for getting the minor to school while she was working. She quit her job in February 2017, after which she got the minor to school.

15

Grandmother denied ever telling anyone that the responding officer bribed the minor with candy. She claimed she never admitted any of the allegations in the petition and stated someone brought her "the paper" and told her "they would take [her] guardianship away" if she did not sign it. She testified she did not know what the allegations against her were when she signed "the paper." The court noted that grandmother signed a waiver on September 12, 2017, indicating she wished to submit her petition on the basis of the social worker's report, but she did not check the box that she admitted the allegations. It was also noted that grandmother checked the box indicating she read and understood the petition. When asked whether she read and understood the petition, grandmother said, "No, I didn't." However, she confirmed the court asked her if she understood the petition and testified she indicated to the court that she did.

When asked to explain her understanding of the allegations in the amended petition, grandmother testified, "[N]o one has ever listened to anything I've said from day one." She added, "Nobody listened to nothing. Everybody was just going on their own understanding of—whatever the kids said." She complained that there was no specific date as to when the alleged injury to the minor's buttocks occurred. When asked what she would do differently, grandmother testified she would make sure the minor and N.M. were at school on time every day, be more engaged in child family teams and the WRAP program, and be more engaged regarding the minor's intellectual disabilities. She stated she had a better understanding of the minor and N.M.'s intellectual disabilities. When asked whether she would change anything about her supervision of the children, grandmother testified she would "keep an even closer eye on them" so there would not be "any room for an allegation of non-supervision."

On March 11, 2019, the court found return of the minor to grandmother was not appropriate. In particular, the court found grandmother failed to make substantive progress in services in that she failed to recognize the issues that led to removal and made no progress in addressing how things would be different were the minor and N.M. to be

16

returned to her. The court noted grandmother continued to dispute the basis for jurisdiction and deny any neglect of the minor or N.M. The court further noted that grandmother continued to minimize the extent of the minor's school absences, failed to acknowledge the special needs of the minor and N.M. was an issue, denied any issues with her parenting, insisted she supervised the minor and N.M. at all times, maintained the minor did not suffer an injury at the hands of his nine-year-old aunt, and for all intents and purposes, planned to continue doing what she was doing before the children were removed.

The court further found that, although the social worker was unaware at the 12-month review hearing that the physical abuse allegation had been stricken, "[t]hat issue was rectified at the last trial" and the case plan "was sufficient and the ruling by the Court clear, such that all parties knew what the issues were that needed to be resolved." The Department referred grandmother to services designed to remedy the problems identified by the court, as demonstrated by the social worker's regular contact with service providers, including therapist Prasad, and actions taken to address grandmother's complaints regarding counseling. And, unlike the previous service period, Prasad questioned grandmother and attempted to educate her on the issues of neglect and failure to protect. The court also found grandmother was included in all child family team meetings. In making its findings, the court found all witnesses credible except for grandmother, whose credibility the court questioned.

The court terminated grandmother's services, finding reasonable services were provided to grandmother by the Department, grandmother made minimal progress in her services, and return of the minor to grandmother would create a substantial risk of detriment to the minor's safety, protection, or physical or emotional well-being. The court set a review hearing pursuant to section 366.3, subdivision (d) as to the minor, and set a section 366.26 hearing as to N.M.

17

## II. DISCUSSION

### A. *Sufficient Evidence to Support Removal Order*

Grandmother contends there was insufficient evidence to support the court's order removing the minor from her custody. In particular, she argues there was insufficient evidence to support the court's finding that removal was necessary given her inability to recognize her deficits in parenting or demonstrate any ability to rectify those deficits was not supported by sufficient evidence. We disagree.

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the . . . guardian's . . . physical custody." (§ 361, subd. (c)(1); see *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) " 'The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home.' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

Removal findings are reviewed under the substantial evidence test, drawing all reasonable inferences to support the findings and noting that issues of credibility are matters for the trial court. (*In re Heather A., supra*, 52 Cal.App.4th at p. 193.)

Here, there is ample evidence to support the court's order of removal. The minor and his twin sibling, both of whom had intellectual disabilities, were detained based on sustained allegations of grandmother's failure to respond to the minor's educational needs (as demonstrated by the minor's significant absences from school and grandmother's failure to attend IEP meetings or sign the necessary IEP documentation), failure to protect, and failure to provide adequate care, supervision, and protection. Grandmother, with the assistance of her attorney, submitted a waiver of rights indicating she read the amended petition, understood its contents, and submitted on the basis of the

18

social worker's report. She confirmed having told the court she read and understood the amended petition during her testimony at the 18-month review hearing.

The record makes plain that, from the beginning and after the start of the proceedings, grandmother disputed jurisdiction despite having signed a waiver, and claimed the amended petition was "all lies." For example, grandmother repeatedly denied there were any problems or issues with her parenting and steadfastly refused to take responsibility for the minor's removal from her custody. She claimed the officer who initially responded to the home bribed the minor with candy to entice the minor to say grandmother hit him, then denied making that statement. She denied having anger issues and questioned why her participation in the anger management program was necessary. She claimed she already possessed the skills taught in some of her classes. She claimed she was always present and never left the minor and N.M. unsupervised but, when asked what she would do differently, she contradicted herself by saying she would never leave the children unsupervised.

Grandmother often made excuses or blamed others for her predicament. While she eventually admitted the minor missed 38 days of school, she told Prasad the absences were due to the minor's teacher instructing her to keep the minor home due to his behavioral issues, and then denied ever having made that statement to Prasad. Despite corroborated evidence that grandmother refused to sign the minor's IEP paperwork and refused to attend IEP meetings, grandmother claimed she only missed one IEP meeting, denied refusing to attend meetings or sign the paperwork, blamed her failure to sign the paperwork on the minor's failure to provide it to her, and claimed she was meeting the minor's educational needs. Finally, when asked what she understood about the allegations in the amended petition, grandmother said, "[N]o one has ever listened to anything I've said from day one. [¶] . . . [¶] Nobody listened to nothing. Everybody was just going on their own understanding of—whatever the kids said." There is sufficient evidence to support the court's findings regarding removal.

19

Grandmother argues the court's findings are flawed because they were based on a case plan and the opinions of service providers and social workers which were themselves premised on the erroneous belief that the physical abuse allegation was sustained. We disagree. While it is clear that the physical abuse allegations remained in the Department's reports well after those allegations were stricken from the amended petition, and that social worker Ralph and therapist Prasad labored for some time under the misguided belief that those allegations had been sustained, the record makes plain that the court was well aware those allegations had been stricken and focused strictly on the remaining sustained allegations of failure to protect and failure to provide care, supervision, and protection.

The court, in its March 11, 2019 ruling, noted grandmother minimized and made excuses for the fact that the minor missed approximately 44 days of school and found grandmother's explanations failed to account for the missed school and demonstrated grandmother's failure to meet the minor's special needs. The court found grandmother continued to "minimize or outright deny" the failure to protect allegations by refusing to acknowledge any risk of potential harm in her home, and denied the minor's young aunt injured the minor rather than demonstrating how she would protect the minor in the future. The court further found grandmother insisted she supervised and protected the minor at all times yet acknowledged she worked outside of the home. The court stated grandmother's plan to ensure adequate supervision of the minor and not leave him unsupervised was unpersuasive given grandmother's claims that she was doing that all along, yet the minor and his sibling were removed from her care.

The record also makes plain that, while Prasad mistakenly believed the physical abuse allegations had been sustained, she also based her opinions and conclusions in part on the sustained allegations of failure to protect and failure to provide care and supervision. For example, Prasad reported grandmother failed to demonstrate the capacity and ability to complete her case plan objections and provide for the minor's

20

safety, protection, physical and emotional well-being, and special needs. Contrary to grandmother's claim that she "admitted where she was at fault—allowing the children to miss a significant amount of kindergarten," Prasad noted that, when asked about her failure to attend IEP meetings or sign important documentation related to the minor's IEP plan, grandmother claimed she only missed one IEP meeting and blamed her failure to sign documents on the minor's failure to give the documents to her.

Prasad further noted that grandmother made excuses for the minor's numerous absences from school, claiming the teacher instructed her to keep the minor home. She also noted grandmother's contradictory statements regarding leaving the minor and N.M. unsupervised. Prasad concluded grandmother "appeared unable to see the connection between the [minor's] special needs, the importance of an IEP, and her role as a parent to advocate for his education need, indicating she had poor understanding of this topic."

Prasad stated grandmother blamed others for her predicament, including blaming the minor's teacher "for not being able to handle his disruptive behaviors in class, resulting in his absences," blaming the police department "for trying to evict her from her housing," blaming social worker Ralph "for being disrespectful, making up lies in court reports, missing monthly appointments, and having a biased agenda to terminate her services," blaming the receiving home "for not supervising [the minor and N.M.], resulting in scratches, bruises, and [the minor] breaking his elbow," blaming the visitation monitor "for being the relative of the children's foster parent," blaming mother "for medically neglecting the children," and blaming Prasad "for being on the phone during sessions, rolling eyes at her, providing her with packets in lieu of actual sessions."

Given grandmother's lack of insight and accountability, Prasad concluded the risk of returning the minor to grandmother was high.

Grandmother takes issue with what she characterizes as "changing requirements" for her case plan following the 12-month review hearing. We are not persuaded. The "changing requirements" grandmother complains about arose when grandmother was

21

referred to a parenting class for children ages zero to five but chose to participate in a different parenting class instead. As social worker Ralph testified, because grandmother had already completed a significant amount of the class, she was encouraged to finish that class but also instructed to complete the class to which she was referred.

Grandmother also takes issue with the fact that there was no documentation of an updated case plan in the record. The Department argues any error in providing grandmother with an updated case plan was harmless. We agree with the Department. At the 12-month review hearing, the court found reasonable individual counseling services had not been provided and the Department failed to include grandmother in any child family team meetings. The court ordered six months of additional individual counseling services. The court further ordered that visits were to remain supervised and no conjoint counseling would occur unless and until grandmother gained insight into how her actions led to CPS involvement. Grandmother was present with counsel at the hearing. Social worker Ralph testified she explained the case plan to grandmother immediately after the 12-month review hearing and discussed the case plan with grandmother at subsequent child family team meetings.

The court's removal order was supported by substantial evidence.

B.     *Sufficient Evidence of Reasonable Services*

Grandmother contends the court's finding of reasonable services was not supported by substantial evidence. The claim lacks merit.

"Reunification services must be 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' (§ 362, subd. (c).) Accordingly, a reunification plan must be appropriately based on the particular family's 'unique facts.' " (*In re T.G.* (2010) 188 Cal.App.4th 687, 696-697.)

"[The Department] 'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to

22

remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] 'The applicable standard of review is sufficiency of the evidence.' " (*In re T.G., supra*, 188 Cal.App.4th at p. 697.)

Here, there is substantial evidence the Department provided reasonable services to grandmother. Pursuant to the sustained allegations in the amended petition, the minor and his sibling were removed from grandmother due to grandmother's failure to supervise and protect the minor or provide the minor with medical, mental health, and behavioral care necessary to address his special needs and regulate his behavior. The allegations referenced the minor's 48 unexcused absences from school within a six-month period, grandmother's failure to attend the minor's IEP meetings or sign IEP documentation, and grandmother's prevention of the minor's access to ALTA Regional Services, and the allegation that she left the minor with inadequate caregivers not capable of supervising or protecting him.

Grandmother's case plan required her to participate in specialized parenting education for special needs children, anger management, individual counseling, and conjoint counseling. Contact with grandmother proved to be challenging for several months until she eventually began to respond to voicemail messages and meet with her social worker.

At the 12-month review hearing, the court found the Department referred grandmother to services designed to remedy the issues leading to removal, but the services provided were not reasonable. In that regard, the court found the delay in individual counsel, for which the Department and grandmother were both responsible, resulted in grandmother's rushed completion of six of the 10 required classes within a

23

three-day period and did not allow for the time required to provide grandmother with the necessary skills and insight. The court found the therapist's conclusion that grandmother benefited from those services unavailing. The court further found that, despite the social worker's concerted efforts to identify and obtain authorization for a parenting program for special needs children and the consequent late referral to an appropriate parenting class, grandmother failed to engage in the recommended service and instead chose to participate in a different class. The court also found the Department failed to include grandmother in child family team meetings. The court concluded the services provided were not reasonable, found grandmother's progress in services was minimal, and ordered six additional months of services. The court ordered the case plan to include individual counseling that "needs to be specific in regard to the parenting deficits that were demonstrated," and encouraged grandmother to participate in services provided to the minor and N.M., particularly educational services, and demonstrate her ability to regularly attend and participate in those services. Finally, the court admonished grandmother to regularly communicate with the Department and attend every visit available to her.

According to the Department's January 2019 addendum report, grandmother was provided with and completed her parenting program and participated in all child family team meetings. She also participated in individual counseling with therapist Prasad. After 10 sessions, Prasad assessed grandmother's prognosis as poor due to grandmother's habit of blaming others, her continuing assertion that there were no issues with her parenting skills or her disciplinary practices or supervision of the minor and his sibling, and the fact that grandmother maintained the jurisdiction/disposition report was "all lies."

Grandmother again focuses on the fact that the Department's reports erroneously included the stricken allegations of physical abuse and argues services were unreasonable because that information was provided to Prasad, who then relied on it to formulate the basis of her conclusions about grandmother. We disagree.

24

Prasad acknowledged her mistaken belief that the allegation of physical abuse against mother had been sustained. She testified that even, without the physical abuse allegations, there would be a risk to the minor and N.M. pursuant to the remaining sustained allegations based on grandmother's lack of progress and insight.

Grandmother argues she was forced to choose between telling the truth (i.e., denying the physical abuse allegations) or going along with incorrect and unfounded information. She ignores the remaining issues of failure to protect and failure to provide appropriate care, which Prasad addressed in counseling and which grandmother persistently and repeatedly denied. Prasad taught grandmother relaxation techniques to help deal with stress and the responsibility of parenting two special needs children. She attempted to discuss with grandmother the portion of the report regarding the failure to supervise and impress upon grandmother the pattern of leaving the minor and N.M. in situations that exposed them to risk. Prasad repeatedly observed grandmother blaming others and attempted to redirect grandmother to focus on herself and be more reflective, to no avail. When Prasad addressed issues related to the minor's school and IEP, grandmother blamed the minor's many absences on the teacher and claimed she was meeting the minor's educational needs. Grandmother similarly blamed any neglect of the minor's medical needs on mother. Most importantly, grandmother claimed the entire jurisdiction/disposition report, as well as the allegations in the amended petition, were "all lies."

Finally, grandmother repeats her argument that there was no updated written case plan listing all of the services she was required to complete. Contrary to grandmother's assertions, the case plan following the 12-month review hearing differed little from the prior case plan. As we previously discussed in subpart I of this opinion, grandmother and her counsel were present at the 12-month review hearing when the court ordered additional services and specified what those services were to entail, namely, individual counseling focused on the deficits in grandmother's parenting, completion of the

25

appropriate parenting class, and grandmother's participation in child family team meetings. Thereafter, social worker Ralph explained the case plan to grandmother on several occasions. Any error in providing grandmother with an updated case plan was harmless.

The juvenile court's order finding grandmother was provided with reasonable services is supported by substantial evidence.

### III. DISPOSITION

The juvenile court's orders are affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

MAURO, Acting P. J.

/S/

_____

MURRAY, J.